3. The People contend that Montgomery's excessive sentence claim is only cognizable under Crim. P. 35(c), and therefore untimely. However, because we dismiss his excessive sentence

2014 COA 168

**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**IN the INTEREST OF K.J.B., a Child,**

**and**

**Concerning K.B., Respondent–Appellant.**

**Court of Appeals No. 14CA0638**

Colorado Court of Appeals, Div. I.

Announced December 4, 2014

claim for failure to adequately preserve the record, we do not address whether it should be considered under Crim. P. 35(c).

Gale A. Drexler, Denver, Colorado, for Petitioner–Appellee.

Joanna K. Smith, Guardian Ad Litem.

K.B., Pro Se.

Opinion by JUDGE TAUBMAN

¶ 1 K.B. (mother) appeals the judgment adjudicating her child, K.J.B. (child), dependent and neglected by default and the order denying her request for a jury trial. We reverse in part, affirm in part, and remand the case for an adjudicatory trial.

## I. Background

¶ 2 The Park County Department of Human Services (department) took the child into protective custody, placed the child with her father, and filed a petition in dependency and neglect. Mother denied the allegations in the petition and requested a trial to the court. The court entered a denial on mother's behalf and scheduled the requested trial to the court.

¶ 3 Shortly thereafter, mother filed two written demands for a jury trial. The initial motion averred that counsel had discussed with mother both types of trials (court and jury) and that mother appeared to understand. However, the motion went on to state that mother now wished to have a jury trial, and she had not voluntarily waived her right to a jury trial. The court denied mother's request for a jury trial and her subsequent motion to reconsider.

¶ 4 Until that point in the proceedings, mother had participated in all the hearings by telephone. However, the court ordered mother to personally appear for the adjudicatory trial.

¶ 5 Mother failed to appear for the adjudicatory trial as ordered. Mother's counsel, however, appeared on her behalf. Nonetheless, the department requested that the court enter default judgment against mother for failing to personally appear. The court found that mother had chosen to cease cooperating with the proceedings and had attempted to delay the proceedings through manipulation. Then, without hearing evidence, it sustained the department's allegations under multiple provisions of section 19–3–102(1), C.R.S. 2014, and adjudicated the child dependent and neglected by default judgment. The court also adopted a treatment plan for mother.

¶ 6 Mother now appeals the court's adjudicatory order. *See* § 19–1–109(2)(c), C.R.S. 2014 (order adjudicating a child dependent or neglected shall be a final and appealable order after entry of the disposition).

## II. Mother's Contentions

¶ 7 Mother raises two contentions. First, she asserts that the court erred in entering the adjudication by default when she denied the petition's allegations, she requested a trial, and her counsel appeared at the trial. Second, she contends that the court erred in denying her jury trial demand. For the reasons set forth below, we agree with mother's first contention but disagree with the second.

## III. Default Judgment

¶ 8 At the outset, we note that the court did not state the legal authority it relied on to enter default judgment against mother for failing to appear as ordered.

¶ 9 Generally, the Colorado Rules of Civil Procedure apply to those juvenile matters that are not governed by the Colorado Rules of Juvenile Procedure or the Children's Code. C.R.J.P. 1; *People in Interest of A.E.*, 914 P.2d 534, 537 (Colo. App. 1996); *see also People in Interest of S.N.*, 2014 CO 64, ¶¶ 20–25, 329 P.3d 276 (applying C.R.C.P. 56 to a dependency and neglect adjudication).

¶ 10 The rules of civil procedure authorize default judgment in two circumstances. *Rombough v. Mitchell*, 140 P.3d 202, 204 (Colo. App. 2006).

¶ 11 First, a court may enter a default judgment as a sanction for willful disobedience of discovery orders. C.R.C.P. 37(b)(2)(C). Here, the record does not indicate, and the department does not assert, that the court ordered mother to personally

appear at the adjudicatory trial as part of discovery. Thus, the court could not have imposed default judgment as a discovery sanction.

¶ 12 Second, a court may enter default judgment when requested by a party entitled to judgment and the other party "has failed to plead or otherwise defend." C.R.C.P. 55; *see also* Office of the Child's Representative, *Guided Reference in Dependency: An Advocacy Guide for Attorneys in Dependency Proceedings* H65 (n.d.).

¶ 13 Generally, a failure "to plead or otherwise defend" occurs when a party fails to file a timely answer or otherwise respond to a complaint. *Rombough,* 140 P.3d at 204 (internal quotation marks omitted). Under the rules of juvenile procedure, responsive pleadings are not required. C.R.J.P. 4.1(a). In any event, nonappearance at trial alone does not constitute a failure to "otherwise defend" permitting entry of a default judgment under C.R.C.P. 55. *Rombough,* 140 P.3d at 204. Stated another way, "[n]ot being present at the trial is not an act of default as contemplated under the rule." *Id.* at 205.

¶ 14 Rather, when a party fails to appear for trial, the court may receive evidence in the party's absence and render judgment on the merits. *Id.*; *see also Davis v. Klaes,* 141 Colo. 19, 22, 346 P.2d 1018, 1019 (1959) ("The taking of evidence and entry of judgment on [the trial] date in the absence of one of the parties who knows his case is set for trial is not a proceeding under the default provisions of the rules, but is, in fact, a trial on the merits."); Colo. Bar Ass'n, Formal Ethics Opinion 114, *Responsibilities of Respondent Parents' Attorneys in Dependency and Neglect Proceedings* (2010) ("The attorney may agree to, or not object to, the presentation of evidence by offers of proof if the client is not present at court, even if the attorney has no recent or unambiguous directions from the client.").

¶ 15 Here, the department moved the court to enter a default judgment based on mother's nonappearance at trial. However, mother had actively litigated the case by: (1) appearing via telephone at every hearing be-

fore the adjudicatory trial; (2) denying the allegations of the petition; and (3) requesting a trial. She also participated in the proceedings through counsel, who appeared on her behalf at every hearing, including the adjudicatory trial. *In Interest of M.V.G.,* 440 S.W.3d 54, 65 (Tex. App. 2010) ("There is no default when a party fails to appear for trial but counsel appears on the party's behalf."); *see also People v. Martinez,* 166 P.3d 223, 224 (Colo. App. 2007) (holding that a defendant who does not physically appear at a restitution hearing may nonetheless appear through counsel to challenge the amount of the award).

¶ 16 Thus, because mother did not fail to "plead or otherwise defend," to the extent the court relied on C.R.C.P. 55, the court erred in entering default judgment against her for failing to appear at the trial. *See Rombough,* 140 P.3d at 204–05; *see also People in Interest of R.D.,* 2012 COA 35, ¶ 17, 277 P.3d 889, 893 (trial court erred in entering order of default and granting motion to terminate father's parental rights when his counsel appeared at termination hearing, but father did not).

¶ 17 It appears clear that the court entered default judgment as a sanction for mother's disobedience of the court's order to appear at the hearing and as punishment for the court's belief that she was attempting to delay the proceedings. The question thus becomes whether the court possessed the authority to sanction mother for her disobedience of its order by entering a default judgment.

¶ 18 The court possesses inherent powers to enable it to efficiently perform its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. *Pe~na v. Dist. Court* 681 P.2d 953, 956 (Colo. 1984). One such power is the contempt power. *In Interest of J.E.S.,* 817 P.2d 508, 511–12 (Colo. 1991). Punishment for contemptuous conduct is designed to vindicate the dignity and authority of the court when its orders have been flouted. *Halaby, McCrea & Cross v. Hoffman,* 831 P.2d 902, 907 (Colo. 1992).

¶ 19 While C.R.C.P. 107 sets out the procedures to be followed and the sanctions authorized to address contempt under the civil rules, this rule does not authorize default judgment as a sanction for contempt. *See* C.R.C.P. 107(a)(4) (authorizing an unconditional fine, a fixed sentence of imprisonment, or both as punitive sanctions for contempt), (a)(5) (authorizing sanctions to force compliance or compel performance as remedial sanctions for contempt), (d)(2) (authorizing the court to assess costs and reasonable attorney fees and, in the case of a failure to perform, a fine or imprisonment until performance).

¶ 20 However, the Colorado Supreme Court has recognized the authority of a judge to impose sanctions for contemptuous conduct through its inherent powers. *See Halaby, McCrea & Cross*, 831 P.2d at 907–08 (recognizing that a settlement conference judge has the authority to impose sanctions against a party who failed to participate in good faith). Even so, the court's inherent authority is generally limited to matters that are reasonably necessary for the proper functioning of the judiciary. *Bd. of Cnty. Comm'rs v. Nineteenth Judicial Dist.*, 895 P.2d 545, 548 (Colo. 1995).

¶ 21 For example, the requirements of due process limit the court's inherent powers. *See Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897); *Frey v. Frey*, 61 Colo. 581, 582–83, 158 P. 714, 715 (1916); *see also* F.G. Madara, Annotation, *Punishment of Civil Contempt in Other Than Divorce Cases by Striking Pleading or Entering Default Judgment or Dismissal Against Contemner*, 14 A.L.R.2d 580, § 5 (1950).

¶ 22 Dependency and neglect cases involve the fundamental liberty interest of parents' right to the care, custody, and control of their child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). To protect this interest, parents must be afforded due process. *Id.* at 753–54, 102 S.Ct. 1388.

¶ 23 In *Hovey*, the Supreme Court considered the trial court's entry of a decree pro confesso after striking the defendants' answer from its file as punishment for the defendants' disobedience of the court's order to pay funds into the court's registry. *Hovey*, 167 U.S. at 411, 17 S.Ct. 841. The Supreme Court held that the decree entered in this manner under the authority of the court's inherent powers violated the defendant's right to due process. *Id.* at 444, 17 S.Ct. 841. It stated:

> The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action, and to render decrees without any hearing whatever, is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends.

*Id.* at 413–14, 17 S.Ct. 841.

¶ 24 The Supreme Court later distinguished *Hovey* from the entry of default for failing to obey a court order where a statute authorized the sanction of a default judgment. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349–50, 29 S.Ct. 370, 53 L.Ed. 530 (1909). In *Hammond*, a state statute authorized striking an answer and entering default judgment as a sanction for a corporation's disobedience of a court's order to give testimony and produce evidence. *Id.* at 339, 29 S.Ct. 370 n. The *Hammond* court reasoned that *Hovey* "involved a denial of all right to defend as a mere punishment." *Id.* at 350, 29 S.Ct. 370. In contrast, *Hammond* presented "a failure by the defendant to produce what we must assume was material evidence." *Id.* at 350, 29 S.Ct. 370. The authority to sanction by default judgment flowed from "the undoubted right of the lawmaking power to create a presumption ... that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." *Id.* at 350–51, 29 S.Ct. 370.

¶ 25 The Children's Code does not authorize entry of a default judgment against a parent for failing to appear at the adjudicatory hearing. Neither the statute setting out the statements that must appear on the petition in dependency or neglect, nor the statute

setting out the summons' contents, notes entry of a default judgment as a potential sanction. §§ 19–3–502(3), 19–3–503, C.R.S. 2014. This contrasts with statutes in other jurisdictions, which expressly authorize the court to consider parents' failure to personally appear at a hearing as consent to enter a judgment adjudicating their child dependent or neglected. *See, e.g.,* Fla. Stat. § 39.506(3) (2014) ("Failure of a person served with notice to personally appear at the arraignment hearing constitutes the person's consent to a dependency adjudication."); Okla. Stat. tit. 10A, § 1–4–305(A) (2014) ("Failure of a person summoned as provided in this part to respond or appear without reasonable cause constitutes the person's consent to an adjudication of the child to be deprived.").

¶ 26 Because the court's entry of default was not authorized by rule or statute and was not within the court's inherent powers, we hold that the court exceeded its authority in entering a default judgment against mother for disobeying its order for her to personally appear at the adjudicatory hearing. *See Hovey,* 167 U.S. at 444, 17 S.Ct. 841; *Frey,* 61 Colo. at 582–83, 158 P. at 715; *see also Beeghly v. Mack,* 20 P.3d 610, 614 (Colo. 2001) (holding that the trial court was not authorized to enter default judgment against the defendants for failing to obey a court order to post bond).

¶ 27 Accordingly, we reverse the court's order adjudicating the child dependent and neglected as to mother and remand the case for a trial.

## IV. Denial of Jury Trial

¶ 28 Because the issue may arise on remand, we address mother's contention that the court erred in denying her jury trial demand. She argues that the court did not advise her of her right to a jury trial, and, therefore, she did not voluntarily waive her right to a jury trial. We disagree.

¶ 29 Under C.R.J.P. 4.2(a) and section 19–3–202(1), C.R.S. 2014, the court shall advise parents of their legal rights at their first appearance. These legal rights include the statutory right to a jury trial. § 19–3–202(1); *see also* C.R.J.P. 4.2(a)(4). Statutory rights may be waived if the waiver is volun-

tary. *People in Interest of N.G.,* 2012 COA 131, ¶ 51, 303 P.3d 1207. Parties may also waive formal advisement of their rights under section 19–3–202(1). *People in Interest of N.A.T.,* 134 P.3d 535, 536–37 (Colo. App. 2006). Further, unless the parent demands a jury trial when the petition's allegations are denied, the parent waives the right. C.R.J.P. 4.3(a).

¶ 30 Mother failed to designate for appeal the transcripts of her first two appearances, which included the shelter hearing held on June 17, 2013, and the first advisement hearing held on August 1, 2013. In the limited record before us, there are indications that the court advised mother of her rights or mother waived formal advisement at these two hearings. A minute order from the shelter hearing states that the "court advises [mother] of proceedings and advises of attorney appointment."

¶ 31 In addition, the court held two advisement hearings: one in August and another on September 19, 2013. Although mother did not designate the transcript of the August advisement hearing on appeal, the transcript of the September advisement hearing reflects that mother's counsel stated that mother had waived formal advisement at the August hearing. The September hearing transcript also reveals that the court and mother's counsel both recalled that the court had offered some advisement to mother at the August hearing.

¶ 32 Further, at the hearing where mother denied the allegations of the petition and the adjudicatory trial was set, mother acknowledged having received an advisement packet from the court.

¶ 33 Because the record before us indicates that mother received an advisement or waived formal advisement, we presume the transcripts of the shelter hearing and the August advisement hearing would show that mother either waived formal advisement or the court properly advised mother as required under C.R.J.P. 4.2(a) and section 19–3–202(1). *See People in Interest of D.C.,* 851 P.2d 291, 293 (Colo. App. 1993). Accordingly, we affirm the order denying mother's jury demand.

## V.   Conclusion

¶ 34 The order entering default judgment and adjudicating the child dependent and neglected as to mother is reversed. The dispositional order is also vacated. *People in Interest of U.S.*, 121 P.3d 326, 327 (Colo. App. 2005) ("[A]n order adjudicating a child dependent and neglected is necessary to vest the court with dispositional remedies."). The order denying mother's jury trial demand is affirmed. The case is remanded to the trial court for an adjudicatory trial.

JUDGE TERRY and JUDGE RICHMAN concur.