The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 13, 2018

## 2018COA177

**No. 17CA2038, *People in Interest of A.R.* — Juvenile Court — Dependency and Neglect — Termination of Parent-Child Legal Relationship; Attorneys and Clients — Ineffective Assistance of Counsel**

In this dependency and neglect proceeding, a division of the court of appeals considers what constitutes ineffective assistance of counsel in a termination of parental rights proceeding and the proper procedure for evaluating this claim.

The division applies the familiar test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), but departs from the outcome-determinative prejudice inquiry applied by previous divisions of this court. Because the Supreme Court requires states to afford respondent parents fundamentally fair procedures when seeking to terminate parental rights, as stated in *Santosky v. Kramer*, 455 U.S. 745, 753-54

(1982), and the statutory right to counsel ensures that respondent parents receive fundamentally fair procedures, we conclude the prejudice inquiry should focus on whether counsel's deficient performance rendered the proceeding fundamentally unfair or the result of the proceeding unreliable, *see Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Applying this prejudice inquiry, the division holds that mother has made a sufficient showing of ineffective assistance of trial counsel based on her counsel failing to subject the case to meaningful adversarial testing. *See United States v. Cronic*, 466 U.S. 648, 659 (1984). Accordingly, the division reverses the judgment terminating her parental rights and remands the case to the juvenile court for further proceedings.

COLORADO COURT OF APPEALS                                    **2018COA176**

Court of Appeals No. 17CA2038
Pueblo County District Court No. 16JV584
Honorable William D. Alexander, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.R., a Child,

and Concerning D.R.,

Respondent-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FURMAN
Román and Lichtenstein, JJ., concur

Announced December 13, 2018

Cynthia Mitchell, County Attorney, David A. Roth, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Anna N.H. Ulrich, Guardian Ad Litem

Jordan Juvenile and Family Law, LLC, Melanie Jordan, Golden, Colorado, for
Respondent-Appellant

¶ 1    In this case, we analyze the important question of what constitutes ineffective assistance of counsel in a termination of parental rights proceeding and the proper procedure for evaluating this claim.

¶ 2    Mother, D.R., appeals the judgment terminating her parent-child legal relationship with the child, A.R.  Although the county attorney offered minimal evidence, mother's trial counsel did little to test this evidence.  Mother's appellate attorney directs our attention to three proceedings that reflect this.

¶ 3    First, at the adjudicatory hearing, the county attorney presented no testimony.  Instead, the county attorney asked the court to adjudicate the child dependent or neglected based on a written report of the investigation conducted by the Pueblo County Department of Social Services.  Mother did not attend this hearing.  Even so, mother's attorney stated that it would be in her "best interests" to have the court enter mother's no-fault admission to the petition.  The court then adjudicated the child dependent or neglected without ensuring that mother knew and understood the consequences of the adjudication.

¶ 4     Second, at the termination of parental rights hearing, the juvenile court terminated mother's parental rights using a procedure it termed "offer of proof."  By this, the court heard no testimony.  Instead, it listened to the county attorney's statements about how the caseworker would testify if she were called as a witness.  Mother's attorney did not object to this procedure.

¶ 5     Third, at a hearing to discuss the child's placement after the termination of parental rights hearing, the court addressed maternal grandmother's request for custody of the child.  Afterward, the court issued a minute order clarifying that had the "court known of extended family," it was likely the court "would have denied" the motion to terminate mother's parental rights.

¶ 6     Mother, through appellate counsel, raises several arguments in support of her appeal.  She contends the juvenile court (1) lacked personal jurisdiction over her because the court did not enter a valid adjudication; and (2) erred in finding there was no less drastic alternative to termination.  She also contends that she received ineffective assistance of trial counsel during the adjudicatory and termination hearings.  We disagree with mother's first contention.  But we agree that mother alleges sufficient facts to show that

counsel's deficient performance rendered the termination proceeding presumptively unfair and unreliable, and her less drastic alternative argument is closely intertwined. We therefore reverse the judgment and remand for a new termination hearing.

¶ 7    Like other divisions before us, we apply the two familiar *Strickland v. Washington,* 466 U.S. 668 (1984), prongs governing review of ineffective assistance claims in dependency and neglect cases. *See, e.g., People in Interest of C.H.,* 166 P.3d 288, 291 (Colo. App. 2007) (The *Strickland* prongs are that "(1) counsel's performance was outside the wide range of professionally competent assistance; and (2) the parent was prejudiced by counsel's errors."); *People in Interest of D.G.,* 140 P.3d 299, 308 (Colo. App. 2006).

¶ 8    These prior divisions, however, did not analyze how to best adapt *Strickland*'s prejudice prong to dependency and neglect cases. Rather, without discussion, they borrowed the prejudice test from criminal cases and determined that to demonstrate prejudice, the parent must show "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the hearing would have been different." *D.G.,* 140 P.3d at 308. For the reasons we articulate below, we part ways with these divisions' prejudice

3

inquiry and apply a prejudice inquiry that better suits parents' right to counsel under Colorado's statutory framework for termination of parental rights proceedings.

¶ 9 Parents' fundamental liberty interest in the care, custody, and management of their children under the Due Process Clause of the Fourteenth Amendment requires states to afford respondent parents fundamentally fair procedures when seeking to terminate parental rights. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982).

¶ 10 In protecting this fundamental liberty interest, the statutory right to counsel in a termination of parental rights proceeding ensures that respondent parents receive fundamentally fair procedures. *See A.M. v. A.C.*, 2013 CO 16, ¶¶ 27-30 (stating that the procedural protections afforded to parents facing termination of the parent-child legal relationship, which include the statutory right to counsel, guarantee fundamental fairness at termination hearings).

¶ 11 Therefore, we conclude that the prejudice inquiry for ineffective assistance claims in termination of parental rights proceedings should focus on whether counsel's deficient performance rendered the proceeding fundamentally unfair or the

4

result of the proceeding unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

## I. The Dependency and Neglect Case

¶ 12    Because the Department offered no testimony at the adjudicatory and termination of parental rights hearings, we glean the following from statements made by the county attorney and various pleadings filed in the case.

¶ 13    In July 2016, the child's paternal stepgrandmother took the child to the emergency room to receive treatment for scabies. Physicians determined that the severity of the child's scabies was due to neglect and that the child had a skull fracture. Although the skull fracture could have resulted from an accident, mother could not recall any incident that would have caused the fracture and explained that she had allowed other family members to care for the child.

¶ 14    The paternal stepgrandmother also reported to the Department that the child appeared to be developmentally delayed, mother and the child's father were using drugs, and the parents did not provide appropriate care for the child while they had all stayed in her home a few months earlier. As a result, the Department

initiated this dependency and neglect case. The juvenile court granted the Department custody of the child, and the court ordered the child placed with the paternal stepgrandmother.

¶ 15   At the adjudicatory hearing — to determine whether the child was dependent or neglected — mother did not personally appear, but her counsel was present. Mother's counsel told the court, "I'm going to proceed in my client's best interests . . . ." Then, instead of presenting any testimony, the county attorney asked the court "to rest upon" a written report of the investigation conducted by the Department because the county attorney had "issues regarding [its] witnesses." The court did not advise mother of the right to cross-examination regarding this report, *see* § 19-1-107(4), C.R.S. 2018, because she was not there.

¶ 16   Despite mother's absence, her counsel then stated that it would be in mother's "best interests" to have the court enter mother's no-fault admission to the petition. The child's guardian ad litem (GAL) agreed with this procedure, stating it was in the child's best interests to "move forward." Based on this information, the court then entered a no-fault adjudication, without ensuring that mother knew and understood the consequences of the adjudication.

¶ 17 Later, based on allegations that mother did not comply with her treatment plan, the Department moved to terminate the legal relationship between mother and the child. About one month later, the child's maternal grandmother expressed interest in participating in the case and raising the child. She moved to intervene and requested an allocation of parental responsibilities (APR) for the child. Mother's counsel did not respond to either motion. He also did not file a motion asking the court to place the child with the maternal grandmother as a less drastic alternative to termination. Instead, mother's counsel filed a "notice of deposit" with an attached handwritten letter from mother that requested that the maternal grandmother have temporary custody of the child.

¶ 18 But the court did not grant the maternal grandmother's motions. Instead, it issued an order stating that it would treat the maternal grandmother as a possible placement for the child after mother's rights were terminated, under section 19-3-605, C.R.S. 2018, and proceeded to a termination hearing without making the maternal grandmother a party to the case.

¶ 19 Mother was not present at the termination hearing, but the maternal grandmother was. Mother's attorney was under the

7

mistaken impression that the maternal grandmother had successfully intervened and told the court that "where I'm going to come from on behalf of my client is through the Intervenor. I presume she'll be able to make a statement." Mother's attorney then informed the court that the maternal grandmother was a long-term "placement for the child, and she doesn't need to adopt the child to care for the child." The maternal grandmother never spoke.

¶ 20 The county attorney then informed the court that "I'm prepared to, if counsel would allow, to proceed by offer of proof . . . ." By that, the county attorney asked merely to inform the court about what he would offer as evidence — if the court held a contested hearing — instead of introducing testimony. Mother's attorney responded, "I don't have any objection to that, Judge." The court then permitted the county attorney to describe how the caseworker would testify if the caseworker were called as a witness. The county attorney also moved to admit exhibits, including mother's substance abuse evaluation and letters sent to mother.

¶ 21 Following the county attorney's offer of proof, the court asked mother's attorney, "[I]s there anything else you'd like to add?"

Mother's attorney responded "[n]o" and only added that he "would stipulate" that his "client indicated to the Court that the Indian Child Welfare Act did not apply." And regarding the "other matters, the best interests," mother's attorney told the court, "I maintain the same position that I don't agree with that but that's for that other procedure that I think we're going to be scheduling."

¶ 22 After the hearing, the court concluded that it would "tentatively grant the request to terminate parental rights." But it did not enter the judgment terminating mother's rights because "if the Court decided to place the child with . . . the grandparent in the case, that would be a less drastic alternative to termination." The court then set a review hearing to "hear how the Department's going to deal with that issue involving the grandparent," including visitation and contact with the child.

¶ 23 At the review hearing, the court heard different proposals. Again, mother was not present. The Department suggested granting APR to the paternal stepgrandmother, with whom the child had been living since the beginning of the case, and allowing visits with the maternal grandmother. But the child's GAL believed that termination was necessary. Mother's attorney then informed the

9

court that his client wanted the child placed with the maternal grandmother, but he did not request an evidentiary hearing to determine whether the child could be placed with the maternal grandmother as a less drastic alternative to termination.

¶ 24 The court ended the hearing to allow the parties to meet and find a resolution that would allow both the paternal stepgrandmother and maternal grandmother to maintain contact with the child. The court set another hearing without entering a judgment terminating mother's parental rights.

¶ 25 At the next hearing, the county attorney requested that the court enter a judgment terminating mother's rights. Only then did mother's attorney request a hearing regarding placing the child with the maternal grandmother. The judge responded, "Well, I'm gonna deny a request for a hearing. I already had the hearing." The court then signed the order terminating mother's parental rights, ordered that the maternal grandmother have visits with the child, and set another hearing to discuss the child's placement.

¶ 26 The juvenile court supplemented its termination judgment a few months later, after a hearing to discuss the child's placement, ruling as follows:

> The order terminating the parental rights of Respondents is currently on appeal. The Court may have dropped the ball on this case early on. The child has extended family on both sides. There is a less drastic alternative to termination. Until the appeals court enters a ruling, this court will hold off on issuing any orders as it relates to the permanent placement of this child. Should the appeals court overturn the termination order, the court will look at maintaining the relationship between the minor child and his extended family.

A minute order clarified that had the "court known of extended family," it was likely the court "would have denied" the motion to terminate mother's parental rights.

¶ 27 We now turn to mother's contentions on appeal.

## II. Jurisdiction to Terminate

¶ 28 Initially, we address whether the juvenile court had personal jurisdiction to terminate the parent-child legal relationship. We conclude that it did.

¶ 29 The child's status as dependent or neglected is established at the adjudication stage of a dependency or neglect proceeding, and "the resulting adjudication provide[s] the jurisdictional bases for State intervention to assist the parents and child in establishing a relationship and home environment that will preserve the family

11

unit." *People in Interest of A.M.D.*, 648 P.2d 625, 640 (Colo. 1982); *see also People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶¶ 20, 31.

¶ 30 If there are procedural errors at the adjudication stage, a parent may challenge these errors by filing a timely appeal of the adjudication order after entry of the disposition. § 19-1-109(2)(c), C.R.S. 2018; C.A.R. 3.4(b). After a court has acquired jurisdiction, procedural errors do not divest the court of jurisdiction. *See People in Interest of Clinton*, 762 P.2d 1381, 1387-88 (Colo. 1988).

¶ 31 Mother mounts two separate personal jurisdiction challenges. She first contends that the court lacked personal jurisdiction because the record does not show she was served with the petition or waived service of the petition. We conclude that the record supports a contrary conclusion. Mother personally appeared with counsel at a hearing in July 2016. She did not assert a defect in service and waived further advisement. Because mother appeared and did not object to the juvenile court's jurisdiction over her, she may not raise this issue on appeal. *See Gognat v. Ellsworth*, 224 P.3d 1039, 1054 (Colo. App. 2009) (recognizing that one who enters an appearance may not later challenge personal jurisdiction), *aff'd*, 259 P.3d 497 (Colo. 2011).

¶ 32    Mother also contends that the court lacked personal jurisdiction because the court did not enter a valid adjudication. She points to three deficiencies: (1) there is no indication she was advised of her rights before her counsel agreed to the child's adjudication; (2) her trial counsel's statement that an admission would be in her "best interests" was not an effective admission; and (3) the adjudicatory hearing was not held within sixty days as required under section 19-3-505(3), C.R.S. 2018.  But these are procedural errors, and procedural errors at the adjudication stage do not divest the court of personal jurisdiction.  *See Clinton*, 762 P.2d at 1387-88.

¶ 33    Mother or her counsel had an opportunity to contest these procedural errors by filing a timely appeal from the adjudication order after entry of the written disposition.  *See* § 19-1-109(2)(c). She or her counsel also could have objected to the entry of adjudication at a later hearing.  Because they did neither, she may not raise these issues on appeal from the termination judgment. *People in Interest of E.H.*, 837 P.2d 284, 287 (Colo. App. 1992).

¶ 34    We, therefore, conclude these purported errors did not divest the juvenile court of jurisdiction, and the court had personal jurisdiction to terminate mother's parental rights.

III.  Ineffective Assistance of Counsel

¶ 35    We next consider mother's claim, raised for the first time on appeal, that she received ineffective assistance of trial counsel at the adjudicatory and termination hearings.  To address these claims, we need to answer these questions:

1. Do respondent parents have a right to effective assistance of counsel in a termination of parental rights hearing?

2. If so, may we consider such a claim when it is first raised on appeal of a judgment terminating parental rights?

3. What test applies when a parent's appellate counsel raises a claim of ineffective assistance of trial counsel in a termination of parental rights proceeding?

A.  Do Parents Have a Right to Effective Assistance of Counsel?

¶ 36    In Colorado, a respondent parent's right to appointed counsel in a termination proceeding is "secured by statute and not constitutional mandate."  *C.S. v. People in Interest of I.S.*, 83 P.3d 627, 636 (Colo. 2004).  The Colorado Children's Code provides that

14

respondent parents have a right "to be represented by counsel at every stage" of dependency and neglect proceedings and a right "to seek the appointment of counsel through the office of respondent parents' counsel" if the parent cannot financially secure counsel on his or her own.  § 19-3-202(1), C.R.S. 2018; *see also* §§ 19-1-105(2), 19-3-602(2), C.R.S. 2018; *C.S.*, 83 P.3d at 636.

¶ 37 Divisions of this court, like other courts around the country, have recognized that a parent's statutory right to counsel includes the right to effective assistance of counsel.  *People in Interest of S.L.*, 2017 COA 160, ¶ 58; *C.H.*, 166 P.3d at 290; *D.G.*, 140 P.3d at 308; *People in Interest of V.M.R.*, 768 P.2d 1268, 1270 (Colo. App. 1989); *In re Parental Responsibilities Concerning Torrance P.*, 724 N.W.2d 623, 631 (Wis. 2006) ("[T]he statutory right to counsel [under the Wisconsin Children's Code] includes the right to effective assistance of counsel[.]"); *In the Interest of M.S.*, 115 S.W.3d 534, 544 (Tex. 2003) ("We hold that the statutory right to counsel in parental-rights termination cases embodies the right to effective counsel.").

¶ 38 Without effective representation, after all, a party "is in no better position than one who has no counsel."  *In the Interest of K.L.*, 91 S.W.3d 1, 7 (Tex. App. 2002) (quoting *Evitts v. Lucey*, 469

15

U.S. 387, 396 (1985)).  And, counsel plays a critical role in protecting parents' interests and ensuring that respondent parents receive fair proceedings.  *See A.M.*, ¶¶ 28-30; *Torrance P.*, 724 N.W.2d at 631.

¶ 39   Accordingly, we agree with these holdings and follow the great weight of authority recognizing that respondent parents' statutory right to counsel in termination proceedings includes the right to effective assistance of counsel.

### B.  When May a Court Consider a Claim of Ineffective Assistance of Counsel?

¶ 40   Dependency and neglect cases do not have a specific procedure for challenging counsel's effectiveness.  *C.H.*, 166 P.3d at 291.  Divisions of this court have therefore permitted respondent parents to challenge trial counsel's effectiveness on direct appeal from a judgment terminating their parental rights.  *S.L.*, ¶¶ 1, 58; *C.H.*, 166 P.3d at 291; *D.G.*, 140 P.3d at 302, 308; *V.M.R.*, 768 P.2d at 1269-70.

¶ 41   We agree with this procedure because it allows a reviewing court to consider all errors that could potentially disrupt the finality of a termination judgment in one step.  *People in Interest of P.N.*,

16

663 P.2d 253, 258 (Colo. 1983) ("There must be finality to litigation involving children."); *see also Santosky*, 455 U.S. at 760 (Children and parents "share a vital interest in preventing erroneous termination of their natural relationship."). Accordingly, this procedure is the most expedient way to address an ineffective assistance of counsel claim, and it mitigates the delay in achieving permanency for children. *See, e.g.,* § 19-1-109(1) (Appeals involving dependency and neglect proceedings "shall be advanced on the calendar of the appellate court and shall be decided at the earliest practical time.").

### C. What is the Test for Evaluating an Ineffective Assistance of Counsel Claim?

¶ 42 Although *Strickland* has two prongs governing review of ineffective assistance of counsel claims, the major issue here is the prejudice component.

¶ 43 Previous divisions of this court have borrowed the *Strickland* outcome-determinative test applied in criminal cases when evaluating the prejudice component of a claim of ineffective assistance of trial counsel in a termination of parental rights proceeding. Under this test, parents must show that, but for

17

counsel's deficient performance, the result of the termination proceeding likely would have been different. *See S.L.,* ¶ 59; *C.H.,* 166 P.3d at 290-92; *D.G.,* 140 P.3d at 308; *V.M.R.,* 768 P.2d at 1270. That is, without counsel's errors, the court would not have terminated parental rights.

¶ 44 Some jurisdictions, however, have applied a "fundamental fairness" test to determine prejudice. *See, e.g., In re Geist,* 796 P.2d 1193, 1204 (Or. 1990) (A parent "must show, not only that her trial counsel was inadequate, but also that any inadequacy prejudiced her cause to the extent that she was denied a fair trial, and, therefore, that the justice of the circuit court's decision is called into serious question."); *see also People in Interest of RGB,* 229 P.3d 1066, 1090 (Haw. 2010) (holding that the proper inquiry is "whether the proceedings were fundamentally unfair as a result of counsel's incompetence"); *Baker v. Marion Cty. Office of Family & Children,* 810 N.E.2d 1035, 1041 (Ind. 2004) ("[W]e deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination.").

¶ 45     We likewise conclude that the focus of the prejudice inquiry should be fundamental fairness.  But, we do so because parents' statutory right to counsel is one of the procedural protections afforded in termination proceedings to ensure fundamental fairness.  *See A.M.*, ¶¶ 27-30.

¶ 46     We, therefore, depart from other divisions of this court that have exclusively applied the *Strickland* outcome-determinative test, without considering fundamental fairness, to determine whether a parent was prejudiced by counsel's deficient performance in a termination of parental rights proceeding.  *See People in Interest of S.N-V.*, 300 P.3d 911, 914 (Colo. App. 2011) (one division of the court of appeals is not bound by the decision of another division).

¶ 47     Fundamental fairness has long been the hallmark of due process in termination of parental rights proceedings.  *A.M.*, ¶ 28 ("Due process is ultimately rooted in the concept of fundamental fairness . . . .").  The foundation of the *Strickland* test is criminal defendants' right to counsel under the Sixth Amendment.  *See Strickland*, 466 U.S. at 684-85, 687.  But the foundation of the fundamental fairness test is the fundamentally fair procedures required in termination proceedings to protect parents' fundamental

liberty interest under the Due Process Clause of the Fourteenth Amendment. *Santosky*, 455 U.S. at 753-54.

¶ 48    Following *Santosky*, fundamental fairness has also been the benchmark by which our supreme court has measured the sufficiency of procedures afforded to parents in termination proceedings. *A.M.D.*, 648 P.2d at 636. Our supreme court considered whether a trial court's error in not entering a formal order of adjudication confirming the children's status as dependent or neglected impaired the fundamental fairness of the termination proceeding or deprived the parent of due process under the circumstances of that case. *J.W.*, ¶ 20. In a different case, the court considered whether full participation by foster parent intervenors undermined the fundamental fairness of the termination hearing. *A.M.*, ¶ 38. The supreme court has also observed that the statute authorizing an expert witness for an indigent parent "is part of the complex statutory scheme designed to accord fundamental fairness to all parties in parental rights termination proceedings." *B.B. v. People*, 785 P.2d 132, 137 (Colo. 1990).

¶ 49　Fundamental fairness as a focus of *Strickland*'s prejudice inquiry is also simply more suited to the highly discretionary nature of termination proceedings.　Because of the extent of discretion afforded to the juvenile court, discerning the impact of counsel's deficient performance in the court's decision to terminate a parent's rights, as required by an outcome-determinative test, is problematic, if not impossible.　In a criminal trial, the fact finder must decide whether the defendant committed a particular crime by determining whether the prosecution proved beyond a reasonable doubt "the existence of all essential elements necessary to constitute the offense charged." *Leonard v. People*, 149 Colo. 360, 372, 369 P.2d 54, 61 (1962).　But in a termination proceeding, the juvenile court, as fact finder, retains discretion in deciding whether to terminate a parent's rights.

¶ 50　We acknowledge that section 19-3-604(1)(c), C.R.S. 2018, sets forth the statutory factors that a juvenile court must find by clear and convincing evidence before it may terminate parental rights. These include "an appropriate treatment plan approved by the court has not been reasonably complied with by the parent . . . or has not been successful," "the parent is unfit," and "the conduct or

21

condition of the parent . . . is unlikely to change within a reasonable time." § 19-3-604(1)(c)(I)-(III). The court must also determine whether reasonable efforts by child-caring agencies have been unable to rehabilitate the parent. § 19-3-604(2)(h).

¶ 51    By requiring the juvenile court to determine what is appropriate, reasonable, fit, and likely, these statutory factors require the court to exercise discretion in determining whether sufficient evidence exists to terminate a parent's rights. The ultimate decision of whether to terminate the parent-child legal relationship also remains in the juvenile court's discretion. *See* § 19-3-604(1) ("The court *may* order a termination of the parent-child legal relationship upon the finding by clear and convincing evidence of any one of the following . . . .").

¶ 52    The juvenile court retains this expansive discretion because its decision depends on additional, fact-specific inquiries. For example, it must determine whether there is a less drastic alternative to termination, such as the possibility here of placing the child in the permanent custody of the maternal grandmother. *See People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986); *see also People in Interest of A.R.*, 2012 COA 195M, ¶¶ 37-38. And,

22

most important, the court must give primary consideration to the child's "physical, mental, and emotional conditions and needs." § 19-3-604(3). In other words, the juvenile court must determine whether termination is in the child's best interests, and that determination is a fact-specific inquiry. *See C.H.*, 166 P.3d at 289; *see also A.M.*, ¶ 26; *In re Dependency of M.-A.F.-S.*, 421 P.3d 482, 503 (Wash. Ct. App. 2018).

¶ 53    In making these highly discretionary determinations, the juvenile court, as fact finder, must assess the credibility of witnesses and determine the weight, sufficiency, and probative value of the evidence. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). And "the sanctity of trial court findings is derived from the recognition that the trial judge's presence during the presentation of testimonial evidence provides an unparalleled opportunity" to make these determinations. *Id.* at 250 (quoting *Page v. Clark*, 197 Colo. 306, 313, 592 P.2d 792, 796 (1979)).

¶ 54    Accordingly, an appellate court substantially defers to a juvenile court's findings in a termination proceeding and only disturbs the court's findings if they are "so clearly erroneous as to find no support in the record." *Id.* (quoting *People in Interest of*

23

*C.A.K.*, 652 P.2d 603, 613 (Colo. 1982)). An appellate court may not reweigh the evidence or substitute its judgment for that of the juvenile court. *See id.* at 253.

¶ 55     Because the outcome of a termination proceeding may depend on any of a variety of discretionary inquiries, an appellate court can only speculate on the extent to which counsel's performance affected the juvenile court's decision to terminate a parent's rights. Thus, given the considerable discretion afforded to the juvenile court, an appellate court usually cannot resolve whether there is a reasonable probability that, but for counsel's deficient performance, the court would not have terminated parental rights. *See D.G.*, 140 P.3d at 308.

¶ 56     But an appellate court can still assess whether a parent has made a sufficient showing that counsel's deficient performance prejudiced the parent by rendering the proceeding fundamentally unfair or unreliable. We, therefore, conclude that a fundamental fairness test is the better approach.

### D.  The Fundamental Fairness Test

¶ 57     Applying a fundamental fairness test, then, a parent asserting ineffective assistance of trial counsel must allege on appeal

24

sufficient facts to demonstrate that (1) counsel's performance was outside the range of professionally competent assistance and (2) counsel's deficient performance prejudiced the parent by rendering the proceeding fundamentally unfair or unreliable. *Lockhart,* 506 U.S. at 372; *C.H.,* 166 P.3d at 291; *see People in Interest of A.G.,* 262 P.3d 646, 651 (Colo. 2011) ("We decline to decide whether *Strickland* applies to a claim of ineffective assistance in a termination hearing, but we acknowledge that if such a claim is cognizable, at the very least, an allegation of prejudice would be required.").

### 1. Competent Assistance

¶ 58     To demonstrate that counsel's performance was outside the range of professionally competent assistance, we look to the practice standards adopted by our supreme court for trial counsel appointed on behalf of indigent parents in dependency and neglect cases. Chief Justice Directive 16-02 includes minimum requirements that a respondent parent's counsel must pursue, such as the following:

- "Advocate for the client's goals and empower the client to direct the representation and make informed decisions,"

25

Chief Justice Directive 16-02, Court Appointment

Through the Office of Respondent Parents' Counsel,

attach. A, p.1 (effective July 1, 2017) (hereinafter CJD

16-02);

- "When needed, use formal discovery methods to obtain information," *id.* at p.2;

- "Timely file all pleadings, motions, and briefs," *id.* at p.3;

- "Research applicable legal issues and advance legal arguments when appropriate," *id.*;

- "Prepare and make all appropriate motions and evidentiary objections," *id.*;

- "Present and cross-examine witnesses, prepare and present exhibits," *id.*; and

- "Request the opportunity to make opening and closing arguments," *id.*

¶ 59    Deciding whether trial counsel rendered deficient performance is in many instances a factual endeavor because some practice standards may not apply to a given case. *See C.H.*, 166 P.3d at 291. Thus, a parent's ineffective assistance of trial counsel claim must first allege sufficient facts in the opening appellate brief that,

26

if proved, would allow a juvenile court on remand to conclude that trial counsel's performance was outside the range of professionally competent assistance as defined by any chief justice directive or another standard of professional conduct. Conversely, if the parent's allegations lack sufficient specificity, the ineffective assistance claim may be summarily denied. *See id.*

## 2. Prejudice

¶ 60 To demonstrate prejudice under a fundamental fairness test, the parent is not required to establish that counsel's deficient performance determined the result of the termination of parental rights proceeding; instead, the parent must show that counsel's deficient performance rendered the termination proceeding fundamentally unfair or unreliable. *See Lockhart*, 506 U.S. at 372.

¶ 61 A judgment terminating parental rights may be unreliable when, due to counsel's deficient performance, the court did not receive essential information favorable to the parent that directly related to the termination criteria under section 19-3-604. And, a termination proceeding is fundamentally unfair if, due to counsel's deficient performance, a parent is deprived of a significant

procedural safeguard to which the law entitles him or her.  *See*
*Lockhart,* 506 U.S. at 372.

¶ 62     The Supreme Court in *Santosky* noted that parents "faced
with forced dissolution of their parental rights have a more critical
need for procedural protections . . . ."  *Santosky*, 455 U.S. at 753.
Accordingly, when "the State moves to destroy weakened familial
bonds, it must provide the parents with fundamentally fair
procedures."  *Id.* at 753-54.  This means that the State must
provide parents adequate procedural safeguards in termination
hearings.  *Id.* at 754 n.7 (The State may not deny "natural parents
constitutionally adequate procedures.  Nor can the State refuse to
provide natural parents adequate procedural safeguards on the
ground that the family unit already has broken down.").

¶ 63     Following *Santosky,* our supreme court agreed that a county
department "must meet certain due process and equal protection
standards before [a parent's] constitutional rights can be
extinguished.  Logically, the greater the deprivation, the greater the
procedural protection provided to parents."  *L.L. v. People,* 10 P.3d
1271, 1276 (Colo. 2000).  Thus, because termination proceedings
affect important constitutional rights, "there must be substantial

28

compliance with statutory requirements." *A.M.D.*, 648 P.2d at 631.

These statutory requirements that provide procedural safeguards to

parents in termination proceedings include the following:

- Notice.  *See* § 19-3-602(1) ("Termination of a parent-child

  legal relationship shall be considered only after the filing of

  a written motion alleging the factual grounds for

  termination.").

- Right to a separate hearing.  *See id.* ("[T]ermination of a

  parent-child legal relationship shall be considered at a

  separate hearing following an adjudication of a child as

  dependent or neglected.  Such motion shall be filed at least

  thirty days before such hearing.").

- Counsel.  *See* § 19-3-602(2) ("[T]he parent or parents shall

  be advised of the right to counsel if not already represented

  by counsel . . . .").

- Appointment of counsel if indigent.  *See* § 19-3-202(1)

  ("[T]he court shall fully advise the respondent [parent] of his

  or her . . . right to seek the appointment of counsel through

  the office of respondent parents' counsel . . . if the

respondent is unable to financially secure counsel on his or her own.").

- Appointment of an expert if indigent.  *See* § 19-3-607(1), C.R.S. 2018 ("An indigent parent has the right to have appointed one expert witness of his or her own choosing whose reasonable fees and expenses, subject to the review and approval by the office of the respondent parents' counsel, shall be paid by the state of Colorado.").

- Review of all ordered evaluations.  *See* § 19-3-607(2) ("All ordered evaluations shall be made available to counsel at least fifteen days prior to the hearing.").

- Appointment of a guardian ad litem.  *See* § 19-3-602(3) ("A guardian ad litem, who shall be an attorney and who shall be the child's previously appointed guardian ad litem whenever possible, shall be appointed to represent the child's best interests in any hearing determining the involuntary termination of the parent-child legal relationship.").

- Proof by clear and convincing evidence.  *See* § 19-3-604(1) ("The court may order a termination of the parent-child

legal relationship upon the finding by clear and convincing

evidence . . . .").

- Right to cross-examine adverse parties and call witnesses. *A.M.*, ¶ 29.

- The juvenile court's consideration and elimination of less drastic alternatives to terminating parental rights. *M.M.*, 726 P.2d at 1123.

- Right to appeal an adverse judgment. *See* § 19-1-109(2)(b) ("An order terminating . . . the legal relationship between a parent or parents and one or more of the children of such parent or parents on a petition, or between a child and one or both parents of the child, shall be a final and appealable order.").

*See A.M.*, ¶¶ 28-29.

¶ 64    In light of these requirements, a parent's ineffective assistance of trial counsel claim must also allege sufficient facts in the opening appellate brief that, if proved, would allow a juvenile court on remand to conclude, on the one hand, that counsel's deficient performance impaired a significant procedural safeguard. *See Lockhart,* 506 U.S. at 372. Significant procedural safeguards

include, for example, the right to notice, *see* § 19-3-602(1), the right to a separate hearing, *see id.*, the right to counsel and appointed counsel if indigent, *see* §§ 19-3-602(2), 19-3-202(1), proof by clear and convincing evidence, *see* § 19-3-604(1), and the right to appeal, *see* § 19-1-109(2)(b).

¶ 65　　Or, on the other hand, a parent must allege sufficient facts that, if proved, would allow a juvenile court on remand to conclude that because of counsel's deficient performance, the court did not receive essential information favorable to the parent that related to the termination criteria under section 19-3-604.  Failure to receive essential information might relate to counsel's efforts to rebut the county department's evidence through cross-examining adverse parties, calling witnesses, obtaining an expert witness, timely review of an ordered evaluation, or litigating a less drastic alternative to termination when a relative has previously been identified.  *See* § 19-3-602(2) (The court must advise a parent that relatives "must file a request for guardianship and legal custody of the child within twenty days" of the filing of the motion to terminate parental rights.).

¶ 66    But, again, if the parent's allegations lack sufficient specificity, such as how the information was essential to the parent's case, the ineffective assistance claim may be summarily denied.  *See C.H.*, 166 P.3d at 291.

¶ 67    Nonetheless, a reviewing court may, in some circumstances, find that counsel's deficient performance was so likely to prejudice the parent that the termination proceeding was presumptively unfair and unreliable.  *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984).  That is, "if counsel entirely fails to subject the [adverse party's] case to meaningful adversarial testing," then "the adversary process itself" is "presumptively unreliable."  *Id.*  This is so because, "as our adversary system presupposes, accurate and just results are most likely to be obtained" in termination of parental rights proceedings "through the equal contest of opposed interests."  *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 28 (1981).

¶ 68    Accordingly, where an appellate court concludes that counsel's deficient performance rendered the termination proceeding presumptively unfair or unreliable, it need not remand a parent's ineffective assistance claim to the juvenile court for further proceedings because "the cost of litigating" the effect of counsel's

deficient performance "in a particular case is unjustified." *Cronic*, 466 U.S. at 658.

¶ 69 We now turn to mother's ineffective assistance of counsel claim.

### E. Mother's Ineffective Assistance of Counsel Claim

¶ 70 Mother's ineffective assistance of counsel claim, as we understand, addresses the fact of the earlier adjudication and other deficiencies at the termination hearing. We address each in turn.

### 1. The Fact of the Earlier Adjudication

¶ 71 Mother, as we understand, points to a lack of compliance with the statutory requirements for establishing the fact of the earlier adjudication and contends that her counsel was ineffective at the adjudicatory stage because he did not

- make a record of her request for an adjudicatory hearing, including requesting or waiving a jury trial;

- represent her position at the adjudicatory hearing (as opposed to purporting to represent her "best interests"); and

- request that evidence be presented at the adjudicatory hearing.

Mother also contends that her counsel was ineffective because he did not object to the court entering an adjudication without ensuring that her admission was knowing and voluntary.

¶ 72    To address mother's contentions, we must first determine whether her claim is cognizable.  Because we conclude her claim is cognizable, we must then determine whether she has alleged sufficient facts that, if proved, would allow a juvenile court on remand to conclude that she received ineffective assistance of trial counsel at the termination hearing.

### a.  The Claim is Cognizable

¶ 73    "[T]he fact of an earlier dependency or neglect adjudication must be established by clear and convincing proof" at a termination hearing.  *A.M.D.*, 648 P.2d at 641 n.14; *see* § 19-3-604(1).  This fact rests on proof of the child's status as dependent or neglected.  *See J.W.*, ¶ 32 (noting that mother's admission established the children's factual status as dependent or neglected and thus met the purpose of the adjudicatory process).  This status is proved at the earlier adjudicatory hearing in several ways.

¶ 74    First, a county department may prove that the factual allegations in the petition are supported by a preponderance of the

35

evidence under section 19-3-505(1) and (7)(a). *See People in Interest of A.H.*, 271 P.3d 1116, 1120 (Colo. App. 2011). The fact of an adjudication may be determined by a court or by a jury. § 19-3-202(2); *see People in Interest of K.J.B.*, 2014 COA 168, ¶ 29; *A.H.*, 271 P.3d at 1120. Or, the material facts may be undisputed. *See People in Interest of S.N.*, 2014 CO 64, ¶ 21.

¶ 75    Second, a parent may waive his or her right to an adjudicatory hearing and enter an admission to the petition. *People in Interest of N.D.V.*, 224 P.3d 410, 415 (Colo. App. 2009); *see* C.R.J.P. 4.2(b). When the parent admits or stipulates that the child is dependent or neglected, the county department is relieved of its burden of proving the allegations in the petition. *See People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989). Before accepting the admission, the court must find that (1) the parent understands his or her rights, the allegations in the petition, and the effect of the admission; and (2) the admission is voluntary. *People in Interest of N.G.*, 2012 COA 131, ¶ 19; *see also* C.R.J.P. 4.2(c)(1)-(2).

¶ 76    (Some juvenile courts enter an adjudication by default. *See generally K.J.B.*, 2014 COA 168. In our case, the court found at the termination hearing that the child had been adjudicated dependent

and neglected by default.  We agree with mother that the record does not show that the court entered a default judgment against her at the adjudicatory hearing.  We express no opinion on whether a default would be an appropriate method to prove an adjudication. *See id.*)

¶ 77     But, if, due to counsel's deficient performance, a county department did not have to prove the factual allegations in the petition by a preponderance of the evidence and the parent did not make a knowing and voluntary admission, the child's factual status as dependent or neglected was not properly established.

¶ 78     Because the fact of adjudication must be established by clear and convincing evidence at a termination of parental rights hearing, *A.M.D.*, 648 P.2d at 641 n.14, a claim attacking this fact based on counsel's performance at the adjudicatory stage is cognizable.  But this claim is only cognizable in the narrow circumstance where, because of counsel's deficient performance, the county department did not prove the child's status as dependent or neglected by a preponderance of the evidence or by a parent's knowing and voluntary admission.  *See J.W.*, ¶ 32.  In so concluding, we express no opinion on whether a parent may raise an ineffective assistance

37

of counsel claim in the direct appeal of an adjudication after the entry of disposition. *See* § 19-1-109(2)(c).

¶ 79    Thus, for us to consider a claim of ineffective assistance of counsel based on counsel's performance at the adjudicatory hearing in a direct appeal from a judgment terminating parental rights, a parent must allege sufficient facts in the opening appellate brief that, if proved, would allow a juvenile court on remand to conclude that

- counsel rendered deficient performance at the adjudicatory hearing; and

- due to counsel's deficient performance, there was not substantial compliance with the requirements for establishing a child's status as dependent or neglected.

¶ 80    We now turn to mother's contentions.

### b.  Mother's Contentions

¶ 81    Mother's contention that her counsel made no record of her request for an adjudicatory hearing is unsupported. Her counsel appeared before the court in early August 2016 to set the matter for a hearing. Still, as mother correctly asserts, counsel neither

requested nor waived mother's right to have a jury at the adjudicatory hearing.

¶ 82    When the adjudicatory hearing began, mother's counsel informed the court that he was unsure why mother was not present because he "had arrangements with" mother to be there. Mother's counsel stated that he would proceed in mother's "best interests" and that it was in her "best interests" for the court to enter a no-fault adjudication.

¶ 83    The record does not show why counsel believed it was in mother's best interests to accept a no-fault adjudication in her absence. Counsel's obligation, however, was to advocate for mother's position, not to represent his idea of her "best interests." CJD 16-02, attach. A, p.1; *see also A.L.L. v. People in Interest of C.Z.*, 226 P.3d 1054, 1063-64 (Colo. 2010). Thus, because of counsel's deficient performance, the court adjudicated the child dependent or neglected without requiring the Department to prove the allegations in the petition by a preponderance of the evidence or ensuring that mother was making a knowing and voluntary admission.

¶ 84 Accordingly, we conclude that mother has alleged sufficient facts that, if proved, would allow a juvenile court on remand to conclude that trial counsel's performance was outside the range of professionally competent assistance as defined by CJD 16-02 and that, due to counsel's deficient performance, there was not substantial compliance with the requirements for establishing the child's status as dependent or neglected. CJD 16-02, attach. A, pp.1, 3 (noting that the parent's attorney shall advocate for the client's goals, empower the client to make informed decisions, and make all appropriate motions and evidentiary objections).

¶ 85 Thus, mother has made a sufficient showing that counsel's deficient performance relieved the Department of its burden of proving the fact of the earlier adjudication by clear and convincing evidence. § 19-3-604(1)(c); *A.M.D.*, 648 P.2d at 641 n.14 ("[T]he fact of an earlier dependency or neglect adjudication must be established by clear and convincing proof at a subsequent termination of parental rights proceeding since the existence of a dependency or neglect adjudication is an essential prerequisite to termination.").

¶ 86    Accordingly, mother's counsel did not subject this essential element to any meaningful adversarial testing, rendering the termination proceeding presumptively unfair and unreliable. *Cronic*, 466 U.S. at 659.

## 2. Termination Hearing

¶ 87    Mother also contends that her counsel was ineffective at the termination hearing because he

- made no objection to admitting exhibits containing inadmissible hearsay statements;

- agreed to proceed by offer of proof; and

- did not effectively litigate placing the child with maternal grandmother as a less drastic alternative.

We agree, in part. Applying the fundamental fairness test, we conclude that overall mother has made a sufficient showing of ineffective assistance of counsel at the termination hearing.

## a. Exhibits

¶ 88    We initially conclude that mother has not made a sufficient showing of ineffective assistance based on her counsel's failure to object to the admission of the exhibits. Mother does not explain which exhibits contained inadmissible hearsay or how the

admission of the exhibits led to a fundamentally unfair or unreliable proceeding.

### b. Offer of Proof

¶ 89     But we conclude that mother has made a sufficient showing of ineffective assistance based on her counsel's agreement to proceed by offer of proof at the termination hearing.

¶ 90     Offers of proof are governed by CRE 103.  CRE 103(a)(2) provides that when a trial court makes a ruling excluding evidence, "the substance of the evidence [i]s made known to the court by offer."  An offer of proof apprises the court of the nature and substance of proposed evidence.  *See Lanari v. People*, 827 P.2d 495, 503 (Colo. 1992).  But an offer of proof is not evidence.  *See People v. Gillis*, 883 P.2d 554, 559 (Colo. App. 1994).

¶ 91     We recognize there is an opinion of the Colorado Bar Association's Ethics Committee broadly stating that in dependency and neglect proceedings, a respondent parent's attorney "may agree to, or not object to, the presentation of evidence by offers of proof."  Colo. Bar Ass'n Ethics Comm., Formal Op. 114 (modified June 19, 2010) (hereinafter, Formal Opinion 114).  We also recognize that footnote 15 of Formal Opinion 114 states that such offers of proof

42

are not the same as offers of proof under CRE 103(a)(2) and that many Colorado jurisdictions use informal offers of proof to expedite proceedings.

¶ 92 Whether proffered evidence at a termination of parental rights hearing is called an "offer of proof" or something else is unimportant. Although the Children's Code permits juvenile courts to conduct hearings informally, *see* § 19-1-106(2), C.R.S. 2018, Formal Opinion 114 does not specifically address the use of "offers of proof" at termination of parental rights proceedings, and our supreme court has held that "before a parent-child relationship may be terminated due process of law requires that the state support the alleged grounds for termination by a standard of proof no less demanding than clear and convincing evidence." *A.M.D.*, 648 P.2d at 631 (referring to the Supreme Court's holding in *Santosky*). Only if "a parent is deemed unfit when tested by demanding standards is a parent-child relationship to be terminated." *Id.* at 640 (citation omitted). Thus, the informal "offer of proof" proceeding discussed in Formal Opinion 114 should not serve as a substitute for an evidentiary termination of parental rights proceeding. *See People in Interest of L.M.*, 2018 CO 34, ¶ 36 (noting the "substantial burden of

43

proof that the legislature has imposed on the State for terminating parental rights in a dependency and neglect proceeding").

¶ 93    And, statements by an attorney representing the county department about how the caseworker would testify at a termination of parental rights proceeding is not equivalent to live testimony made under oath. *See People v. Fry*, 92 P.3d 970, 975 (Colo. 2004) ("[T]estimony is much more reliable when it is given under oath at trial where the witness can be cross-examined and the [fact finder] may observe the witness's demeanor."). (We do not mean to suggest that it is always improper for counsel to stipulate to facts not in dispute.)

¶ 94    Mother's counsel here stated that he did not "have any objection" to the county attorney talking about the evidence instead of offering live testimony at the termination hearing. Mother's counsel also neither contested the county attorney's statements, nor made clear that he was *not* stipulating to the statements. *See* Formal Opinion 114 at n.15 (cautioning opposing counsel to not stipulate to the statements made in an "offer of proof" proceeding). As a result, the court terminated mother's parental rights without hearing any testimony and with little evidence.

¶ 95    Accordingly, mother has made a sufficient showing that trial counsel's performance was outside the range of professionally competent assistance as defined by CJD 16-02. CJD 16-02, attach. A, p.3 (providing that the parent's attorney shall advance a legal argument, prepare and make all evidentiary objections, present and cross-examine witnesses, present exhibits, and request the opportunity to present opening and closing arguments). And, because mother's counsel did not subject the Department's case to any meaningful adversarial testing, *see Cronic*, 466 U.S. at 659, counsel's deficient performance further rendered the termination proceeding presumptively unfair and unreliable. *See id.*

¶ 96    Thus, we reverse the termination judgment and remand for a new termination of parental rights hearing.

### c.  Less Drastic Alternatives

¶ 97    Mother mounts two challenges regarding less drastic alternatives to termination. She contends that (1) the court erred in finding no less drastic alternative to termination, and (2) mother's counsel did not effectively litigate placing the child with maternal grandmother as a less drastic alternative to termination. Because these two issues are so intertwined, and we are otherwise

remanding for a new termination of parental rights hearing, we need not address mother's ineffective assistance of counsel contentions regarding a less drastic alternative.

¶ 98    The maternal grandmother asked to be made a party to the case and even moved for the court to allocate parental responsibilities for the child to her.  Mother's counsel indicated that the maternal grandmother could be a long-term placement for the child and could care for the child without an adoption.  But he did not move for APR to the maternal grandmother, respond to the maternal grandmother's APR motion, object to the juvenile court's denial of the maternal grandmother's motion to intervene, or timely request an evidentiary hearing on the matter.

¶ 99    Because mother's counsel did not litigate this issue, the record is unclear as to whether the juvenile court fully considered the maternal grandmother as a less drastic alternative to termination. This may be the reason the judge could not recall at a later hearing that maternal grandmother had moved for custody of the child before the termination hearing.

¶ 100   A reviewing court often presumes that the juvenile court considered and eliminated less drastic alternatives to termination if

the court's findings conform to the statutory criteria for termination and its findings are supported by clear and convincing evidence. *C.S.*, 83 P.3d at 640-41. But counsel did not timely litigate the less drastic alternative issue, the juvenile court's findings are based on little evidence, and the court at a later hearing indicated that it wanted to consider maternal grandmother as a less drastic alternative to termination. Thus, this is not a case where we can presume anything about maternal grandmother based on the juvenile court's findings regarding the other termination criteria and their record support. *Id.*

¶ 101 Indeed, the juvenile court indicated it likely would have denied the Department's motion to terminate parental rights and that there was a less drastic alternative. For these reasons, in the interest of judicial economy, the juvenile court may consider maternal grandmother as a less drastic alternative before conducting a full evidentiary termination hearing.

## IV. Conclusion

¶ 102 We reverse the judgment and remand the case to the juvenile court for further proceedings.

¶ 103    As a threshold matter, the juvenile court may consider the maternal grandmother as a viable less drastic alternative to termination.  If, however, the court determines that maternal grandmother is not a viable less drastic alternative, the court must hold a new evidentiary termination hearing and allow mother to present evidence and argument in opposition.  The court and parties must give priority on the docket to holding such a hearing.  *See* § 19-5-202.5(1), C.R.S. 2018.

¶ 104    Any party may appeal the order terminating or refusing to terminate the legal relationship between mother and her child.  § 19-1-109(2)(b).

JUDGE ROMÁN and JUDGE LICHTENSTEIN concur.