Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 10, 2020

**2020 CO 10**

**No. 18SC919** *People in Interest of A.R.*—**Juvenile Court**—**Dependency and Neglect**—**Termination of Parent-Child Legal Relationship**—**Ineffective Assistance of Counsel.**

This case requires the supreme court to decide a number of issues relating to claims of ineffective assistance of counsel in the context of a dependency and neglect proceeding.

The court first concludes that in a direct appeal from a judgment terminating parental rights, an appellate court may consider a claim of ineffective assistance of counsel based on counsel's performance at an adjudicatory hearing only when the party claiming ineffective assistance did not have a full and fair opportunity to assert such a claim immediately after his or her child was adjudicated dependent and neglected. Next, the court concludes that the proper test for prejudice in the context of a claim of ineffective assistance of counsel in a dependency and neglect proceeding is the test for prejudice set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Accordingly, to establish prejudice from counsel's deficient performance in a dependency and neglect proceeding, a party must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Last, the court concludes that an appellate court may vacate a juvenile court's decision in a dependency and neglect proceeding on the ground of ineffective assistance of counsel without remanding for further fact-finding when either (1) the record is sufficiently developed to allow the appellate court to decide the question of counsel's ineffectiveness or (2) the record establishes presumptive prejudice under the standard set forth in *United States v. Cronic*, 466 U.S. 648, 656–62 (1984).

Applying these determinations to the facts and claims before it, the court concludes that respondent mother (1) had a full and fair opportunity to appeal the adjudication entered after the adjudicatory hearing and thus cannot now raise her claim that her counsel was ineffective at that hearing; (2) has not established a basis for presuming prejudice in this case and has not shown that her counsel was ineffective in allowing the Pueblo County Department of Human Services to proceed by way of an offer of proof at the termination hearing; and (3) has established that her counsel was ineffective in not properly litigating the issue of less drastic alternatives to termination and therefore a remand for further proceedings is warranted and appropriate.

Accordingly, the supreme court affirms the judgment of the division below, albeit on different grounds, and remands this case for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2020 CO 10

---

### Supreme Court Case No. 18SC919
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA2038

---

### Petitioner:

A.R.,

and

### Petitioner:

The People of the State of Colorado,

### In the Interest of Minor Child:

A.R.,

v.

### Respondent:

D.R.

---

### Judgment Affirmed
*en banc*
February 10, 2020

---

**Attorneys for Petitioner A.R.:**
Anna N.H. Ulrich Attorney at Law, L.L.C.
Anna N.H. Ulrich, Guardian ad litem

*Crestone, Colorado*

**Attorneys for Petitioner the People of the State of Colorado:**
Gradisar Trechter Ripperger Roth
David A. Roth
    *Pueblo, Colorado*

**Attorneys for Respondent:**
Jordan Juvenile and Family Law, LLC
Melanie Jordan
    *Golden, Colorado*

**Attorneys for Amicus Curiae National Association of Counsel for Children**:
Brooke Silverthorn
Christopher Church
    *Denver, Colorado*

**Attorney for Amicus Curiae Office of Respondent Parents' Counsel**:
Ruchi Kapoor
    *Denver, Colorado*

**Attorneys for Amicus Curiae Office of the Child's Representative**:
Sheri Danz
Cara Nord
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case requires us to decide a number of issues relating to claims of ineffective assistance of counsel in the context of a dependency and neglect proceeding. Specifically, we are asked to decide (1) whether, in a direct appeal from a judgment terminating parental rights, an appellate court may consider a claim of ineffective assistance of counsel based on counsel's performance at an adjudicatory hearing; (2) the correct standard for determining whether a parent in a dependency and neglect proceeding was prejudiced by counsel's ineffective performance; and (3) whether an appellate court may vacate a juvenile court's decision in a dependency and neglect proceeding on the ground of ineffective assistance of counsel without remanding the case for further evidentiary development.[1]

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether the court of appeals, in departing from the decisions of other divisions of the court of appeals, correctly designated "fundamental fairness" as the best means to apply the second prong of the analysis described in *Strickland v. Washington*, 466 U.S. 668 (1984), when assessing whether a parent's trial court counsel was ineffective in an appeal from a termination order in a dependency and neglect case.

2. Whether an appellate court may vacate a trial court's decision in a dependency and neglect case without remanding the case to the trial court to make findings under *Strickland*'s two-part test.

¶2 Addressing these issues in turn, we first conclude that in a direct appeal from a judgment terminating parental rights, an appellate court may consider a claim of ineffective assistance of counsel based on counsel's performance at an adjudicatory hearing only when the party claiming ineffective assistance did not have a full and fair opportunity to assert such a claim immediately after his or her child was adjudicated dependent and neglected (e.g., by filing a timely direct appeal from the adjudication). Next, we conclude, contrary to the division below, that the proper test for prejudice in the context of a claim of ineffective assistance of counsel in a dependency and neglect proceeding is the test for prejudice set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and not a fundamental fairness test. Accordingly, to establish prejudice from counsel's deficient performance in a dependency and neglect proceeding, a party must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Last, we conclude that an appellate court may vacate a juvenile court's decision in a dependency and neglect proceeding on the ground of ineffective assistance of counsel without remanding

---

3. Whether an appellate court, in a direct appeal from a judgment terminating parental rights, may consider a claim of ineffective assistance of counsel based on counsel's performance at an adjudicatory hearing.

4

for further fact-finding when either (1) the record is sufficiently developed to allow the appellate court to decide the question of counsel's ineffectiveness or (2) the record establishes presumptive prejudice under the standard set forth in *United States v. Cronic*, 466 U.S. 648, 656–62 (1984).

¶3 Applying these determinations to the facts and claims now before us, we conclude that respondent D.R. ("mother") (1) had a full and fair opportunity to appeal the adjudication entered after the adjudicatory hearing and thus cannot now raise her claim that her counsel was ineffective at that hearing; (2) has not established a basis for presuming prejudice in this case and has not shown that her counsel was ineffective in allowing the Pueblo County Department of Human Services (the "Department") to proceed by way of an offer of proof at the termination hearing; and (3) has established that her counsel was ineffective in not properly litigating the issue of less drastic alternatives to termination and therefore a remand for further proceedings is warranted and appropriate.

¶4 Accordingly, we affirm the judgment of the division below, albeit on different grounds, and we remand this case for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶5 In the evening of July 9, 2016, petitioner A.R.'s (the "child's") paternal step-grandmother took him to the emergency room at St. Mary Corwin Medical

Center in Pueblo to receive treatment for scabies. A physician who treated the then-six-month-old child determined that the degree of scabies on the child evinced a case of neglect, and, later that night, another doctor confirmed that the child also had a skull fracture. The psychiatric liaison at the hospital thus contacted the Department, and a crisis caseworker arrived soon thereafter.

¶6 The step-grandmother reported to the crisis caseworker that the child and his parents had stayed with her for about six weeks, from late April through May 2016, and that, in her view, the child's parents were not caring for the child appropriately. The step-grandmother further stated that the child appeared behind developmentally and that his parents were not working, sleeping all day, and using drugs.

¶7 While the crisis caseworker was speaking to the step-grandmother, a Pueblo police officer arrived and stated that she was taking custody of the child due to concerns of neglect. Thereafter, the child was transferred to the Children's Hospital in Denver for treatment of his skull fracture.

¶8 The next afternoon, pursuant to the step-grandmother's instruction, mother contacted the crisis caseworker. The crisis caseworker explained that the Department had custody of the child and what the concerns were. Mother denied that she abused substances or that she had abused or neglected her child in any

way, and she expressed surprise when she was told that her child had a skull fracture, stating that she did not know how the child had sustained that injury.

¶9 The Department subsequently initiated this dependency and neglect proceeding, and the juvenile court granted the Department continued custody of the child and ordered the child placed with the step-grandmother.

¶10 Three months later, the juvenile court held an adjudicatory hearing with respect to both parents. When mother did not appear, her counsel told the court that he had made arrangements with mother to attend the hearing. Counsel indicated that he did not know why mother was not present. Counsel then stated, "I did advise my client [of] the status of the ma[t]ter and the position of The Department and it—it may just well be that she determined that was a result that she might be okay with and I'll let the County Attorney go forward on that [sic]." Counsel added, "[S]o I'm going to proceed in my client's best interests . . . ."

¶11 Apparently in an effort to move the case forward, and after speaking with counsel for both mother and the child's father (who also did not appear), the Department asked the court for leave to amend the Department's dependency and neglect petition to include an allegation that the child was dependent or neglected through no fault of the child's parents and to allow the Department to rest on the Report of Investigation filed with the petition. The Department sought to proceed in this fashion because it had "issues regarding [its] witnesses, as well."

¶12    Mother's counsel responded, "I think, it would be in my client's best interests for me . . . [t]o accept [a no-fault adjudication] and the treatment plan [that the Department had proposed]."  The child's guardian ad litem ("GAL") agreed with this procedure, stating that it was in the child's best interests to "move forward," and the court therefore entered a no-fault adjudication and approved the proposed treatment plan.  Mother did not appeal this adjudication.

¶13    The matter proceeded, and at a hearing that took place approximately four months later, the Department indicated that mother had just begun to get involved in the case and wanted to become engaged in it but that the Department nonetheless intended to file a motion for termination of parental rights based on mother's general noncompliance with her treatment plan.  Mother's counsel replied by confirming that mother was "trying to [b]ecome involved" in the case, and he noted that mother had handed him a document indicating that she wanted the child to be placed with the child's maternal grandmother (the child was still placed with his paternal step-grandmother at that time).  Counsel, however, does not appear to have filed any motions or briefs requesting such a placement.

¶14    One month later, the Department filed its motion for termination of parental rights.  In this motion, the Department alleged, as pertinent here, that (1) mother had not reasonably complied with her treatment plan and the treatment plan had not been successful; (2) mother's conduct or condition was unlikely to change

8

within a reasonable period of time; (3) mother was unfit; (4) continuation of the parent-child legal relationship was likely to result in a grave risk of death or serious injury to the child; and (5) it would be in the child's best interests to terminate the parent-child relationship between child and mother.

¶15 Thereafter, the child's maternal grandmother, acting pro se, moved to intervene and requested custody of the child "if mother is unable to regain [custody] of him." At that point, mother's counsel filed what he called a "Notice of Deposit" with an attached handwritten letter from mother requesting that the maternal grandmother "get temp[o]rary custody of [the child] just for the time being till [sic] he[']s back in my custody."

¶16 The court does not appear to have acted on counsel's so-called "Notice of Deposit." In response to the maternal grandmother's motion for leave to intervene, however, the court issued an order stating, in pertinent part, "[B]ased upon the nature of the pleadings the Court believes the pleadings are a Request for Placement with Family Members pursuant to C.R.S. 19-3-605 and will treat the request as such." In light of this interpretation, the court never ruled on the maternal grandmother's motion for leave to intervene, and the case proceeded to a termination hearing without her having become a party.

¶17 Mother did not appear at the termination hearing, but the maternal grandmother was present. Apparently believing (albeit incorrectly) that the court

9

had granted the maternal grandmother's motion for leave to intervene, mother's counsel told the court, "Your Honor, where I'm going to come from on behalf of my client is through the Intervenor. I presume she'll be able to make a statement." Mother's attorney further stated that the maternal grandmother was "a long[-]term placement for the child, and she doesn't need to adopt the child to care for the child, and she would be a good adoptive resource."

¶18 The court then asked the Department whether it had considered the maternal grandmother as a potential placement. The caseworker responded that it had done so but that "there's no relationship between her and the child. She has not had any contact with the child, and the child doesn't know her." The Department thus stated that it was "going with" the child's current placement with the step-grandmother because the child was "very bonded and attached there and thriving."

¶19 In light of the foregoing, the court stated that it was willing to go forward with the termination hearing but that it would set a separate hearing to address placement of the child because of the "request from a grandparent to have custody of the child." The court noted, "There seems to be a lot of legislative preference for that placement."

¶20 The Department then stated that it was "prepared to, if counsel would allow, to proceed by offer of proof." Mother's attorney responded, "I don't have

any objection to that, Judge," and the Department thus proceeded to describe how the caseworker would have testified had she been called as a witness. The Department concluded its proffer by arguing that all of the requirements for termination had been satisfied, including that there were no less drastic alternatives to termination, and that termination was appropriate in this case. The Department also moved to admit certain exhibits that it had discussed in its proffer, including, among other things, mother's substance abuse evaluation and letters that the caseworker had sent to mother in an attempt to engage her in treatment. Mother's counsel indicated that he had no objections to the exhibits, and the court admitted them.

¶21 Following the Department's offer of proof, the court asked mother's counsel, "[I]s there anything else you'd like to add?" and noted that the court understood counsel's "concern about the biological grandmother." Counsel responded, "[n]o," but "[w]ith regard to these other matters, the best interests, Your Honor, I maintain the same position that I don't agree with that but that's for that other procedure that I think we're going to be scheduling."

¶22 At the conclusion of the foregoing presentations and discussions, the court stated that it would "tentatively grant the request to terminate parental rights." The court did not enter a judgment, however, because "if the Court decided to place the child with . . . the grandparent in the case, that would be a less drastic

11

alternative to termination." The court then set a review hearing to "hear how the Department's going to deal with that issue involving the grandparent," including visitation and contact with the child.

¶23 The review hearing took place several months later. Mother again did not appear. At this hearing, the Department indicated that it would like to award sole allocation of parental responsibilities to the step-grandmother with whom the child had been living since the beginning of the case and that it would allow visits with the maternal grandmother. The GAL stated, however, that in her opinion, the best interests of the child necessitated termination. Mother's attorney then reiterated that mother wanted the child to be placed with the maternal grandmother, but he did not request an evidentiary hearing to determine whether such a placement would have been viable or whether it would have afforded a less drastic alternative to termination.

¶24 The court decided to give the parties an opportunity to meet, to see if they could find a resolution that would allow both sides of the family to maintain contact with the child. The court thus set another hearing without entering judgment terminating mother's parental rights.

¶25 The next hearing occurred nine days later. At this hearing, the Department requested that the court issue the order terminating mother's parental rights. Only then did mother's counsel request a hearing regarding placement with the

12

maternal grandmother, who, according to counsel, was the child's only blood relative. The court responded, "Well, I'm gonna deny a request for a hearing. I already had the hearing." The court then signed the order terminating mother's parental rights, ordered that the maternal grandmother have visits with the child, and set another hearing to discuss the child's placement.

¶26 Mother appealed, alleging, as pertinent here, that she had received ineffective assistance of counsel at both the adjudicatory and termination hearings and that the juvenile court had erred in finding no less drastic alternatives to termination.

¶27 Notably, several months later, at a hearing to discuss the child's placement, the juvenile court supplemented its above-noted termination order, stating:

> The order terminating the parental rights of Respondents is currently on appeal. The Court may have dropped the ball on this case early on. The child has extended family on both sides. There is a less drastic alternative to termination. Until the appeals court enters a ruling, this court will hold off on issuing any orders as it relates to the permanent placement of this child. Should the appeals court overturn the termination order, the court will look at maintaining the relationship between the minor child and his extended family.

¶28 Thereafter, the court issued a minute order stating, "[H]ad court known of extended family, it is likely court would have denied" the motion to terminate mother's parental rights.

¶29 In a unanimous, published decision, a division of the court of appeals subsequently reversed the judgment terminating mother's parental rights and

13

remanded the case for further proceedings. *People in Interest of A.R.*, 2018 COA 177, ¶¶ 102–04, __ P.3d __. In reaching this conclusion, the division addressed, as pertinent here, three interrelated questions: (1) whether a claim of ineffective assistance of counsel at the adjudicatory phase may be raised in an appeal of the termination order; (2) what standard should be applied to determine whether counsel in a dependency and neglect proceeding was ineffective; and (3) whether an appellate court can vacate a termination or adjudication order based on presumptive prejudice set out in the parties' briefs, or whether it must remand for further evidentiary development. *Id.* at ¶¶ 42–56, 67–68, 71–79.

¶30 Answering these questions, the division concluded that a claim of ineffective assistance of counsel during the adjudicatory phase is cognizable on direct appeal from a termination order if a parent alleges sufficient facts in his or her opening appellate brief. *Id.* at ¶ 79. Specifically, the division noted that the parent must allege facts that, if proved, would allow the juvenile court on remand to conclude that counsel rendered deficient performance at the adjudicatory hearing and that due to that deficient performance, "there was not substantial compliance with the requirements for establishing a child's status as dependent or neglected." *Id.* The division further concluded that the proper standard for determining prejudice on a claim of ineffective assistance of counsel in a dependency and neglect case was not the familiar *Strickland* standard. *Id.* at

¶¶ 42–46. Rather, the division opined that prejudice should be measured under a "fundamental fairness" standard. *Id.* at ¶¶ 47–56. Under this standard, a party asserting ineffective assistance of counsel must show that counsel's deficient performance prejudiced the party by rendering the proceeding fundamentally unfair or unreliable. *Id.* at ¶ 57. And the division determined that when a reviewing court concludes that "counsel's deficient performance was so likely to prejudice the parent that the termination proceeding was presumptively unfair and unreliable," then counsel has failed to subject the opposing party's case to meaningful adversarial testing, and the appellate court can determine the ineffective assistance issue without remanding the case for further proceedings. *Id.* at ¶¶ 67–68 (citing *Cronic*, 466 U.S. at 658–59).

¶31 Applying these principles to the case before it, the division concluded that counsel's performance at the adjudicatory hearing was deficient because counsel (1) stated without providing a basis that it was in mother's best interest for the court to enter a no-fault adjudication in mother's absence; (2) did not advocate for mother's position but instead represented his own idea of her best interests; and (3) allowed the court to adjudicate the child dependent or neglected without requiring the Department to prove its allegations by a preponderance of the evidence or ensuring that mother was making a knowing and voluntary admission. *Id.* at ¶¶ 82–85. The division further determined that counsel's

performance at the termination hearing was deficient because, among other things, counsel agreed to the Department's request to proceed by way of an offer of proof. *Id.* at ¶¶ 89–95.

¶32 Turning to the question of prejudice, the division determined that counsel's performance at both the adjudicatory and termination hearings was presumptively prejudicial because on both occasions, counsel failed to subject mother's case to meaningful adversarial testing, thereby rendering the entire termination proceeding fundamentally unfair and unreliable. *Id.* at ¶¶ 86, 95. The division thus concluded that reversal of the termination judgment and remand for further proceedings was required. *Id.* at ¶ 96.

¶33 Finally, the division noted mother's claims that the juvenile court had erred in finding no less drastic alternative to termination and that her counsel had not effectively litigated placing the child with maternal grandmother as a less drastic alternative to termination. *Id.* at ¶ 97. The division concluded, however, that it did not need to address these issues because it was otherwise remanding for a new termination hearing. *Id.* Nonetheless, the division observed that because the juvenile court had indicated that it likely would have denied the Department's motion to terminate parental rights had it considered less drastic alternatives, "in the interest of judicial economy, the juvenile court may consider maternal grandmother as a less drastic alternative before conducting a full evidentiary

termination hearing." *Id.* at ¶ 101. The division stated that if the juvenile court were to conclude that placement with the maternal grandmother was not a viable less drastic alternative, then the court must hold a new evidentiary termination hearing and allow mother to present evidence and argument in opposition. *Id.* at ¶ 103.

¶34 The division thus reversed the judgment terminating mother's parental rights and remanded the case for further proceedings. *Id.* at ¶ 102.

¶35 The GAL filed a petition for a writ of certiorari, in which the Department subsequently joined, and we granted that petition.

## II. Analysis

¶36 We begin by setting forth the applicable standard of review. We then address the timeliness of mother's claim of ineffective assistance of counsel at the adjudicatory hearing, and we conclude that this portion of mother's appeal was untimely. Last, we address mother's claim that her counsel provided ineffective assistance at the termination hearing, and after discussing the proper legal standards to be applied, we conclude that counsel was ineffective in not properly litigating the issue of less drastic alternatives to termination.

### A. Standard of Review

¶37 A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law

17

that we review de novo. *Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 18, 442 P.3d 402, 407; *State ex rel. Weiser v. Castle Law Grp., LLC*, 2019 COA 49, ¶ 35, __ P.3d __ ; *In re Marriage of Krejci*, 2013 COA 6, ¶ 3, 297 P.3d 1035, 1037. We also review de novo the application of the pertinent statute of limitations, and we consider, as a matter of law, whether the facts alleged, if true, could constitute justifiable excuse or excusable neglect to overcome an untimely filing. *Close v. People*, 180 P.3d 1015, 1019 (Colo. 2008); *State ex rel. Weiser,* ¶ 96.

## B. Ineffective Assistance at the Adjudicatory Hearing

¶38 The GAL contends that the division erred in concluding that a claim of ineffective assistance based on counsel's performance at an adjudicatory hearing is cognizable in a direct appeal from a judgment terminating parental rights when the parent makes sufficient allegations of deficient conduct and prejudice. We agree that this determination was error.

¶39 Upon the filing of a petition alleging that a child is dependent or neglected, the court will generally conduct an adjudicatory hearing to consider whether the petition's allegations are supported by a preponderance of the evidence. § 19-3-505(1), C.R.S. (2019). If the court finds that the petition's allegations are not supported by a preponderance of the evidence, then the court shall order the petition dismissed and the child and his or her parents, guardian, or legal custodian discharged from any detention or restriction previously ordered.

§ 19-3-505(6). If, conversely, the court finds that the petition's allegations are supported by a preponderance of the evidence, then the court shall sustain the petition and make an order of adjudication setting forth whether the child is dependent or neglected. § 19-3-505(7)(a). The court shall then hold a dispositional hearing. § 19-3-505(7)(b).

¶40 At the dispositional hearing, the court hears evidence concerning the proper disposition best serving the interests of the child and the public. § 19-3-507(1)(a), C.R.S. (2019). The court must then enter a decree of disposition. § 19-3-508(1), C.R.S. (2019). In most cases, the court will then approve an appropriate treatment plan involving the child and each named respondent, unless no appropriate treatment plan can be devised as to a particular respondent. § 19-3-508(1)(a)–(e). "The purpose of the treatment plan is to provide services to the family, to prevent unnecessary out-of-home placement of the child, and to facilitate reunification of the child and family." *A.M. v. A.C.*, 2013 CO 16, ¶ 14, 296 P.3d 1026, 1031. Thereafter, if the treatment plan has not been reasonably complied with or has been unsuccessful, and if certain other statutory prerequisites have also been satisfied, then the Department may seek to terminate the respondent's parental rights. §§ 19-3-602(1), -604(1)(c), C.R.S. (2019).

¶41 In light of the foregoing, the result of an adjudicatory hearing is significant because the order that the court enters after that hearing determines how—and,

indeed, even if—the case should proceed. *See* § 19-3-505(6). Accordingly, our legislature has provided that "[a]n order decreeing a child to be neglected or dependent shall be a final and appealable order after the entry of the disposition pursuant to section 19-3-508." § 19-1-109(2)(c), C.R.S. (2019). And subject to limited exceptions, the failure to file a timely notice of appeal from the adjudication will generally result in the dismissal of an appeal of the adjudication order. *See In the Interest of C.A.B.L.*, 221 P.3d 433, 438–39 (Colo. App. 2009) (noting that the timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review, although in certain limited circumstances, the court may apply the so-called "unique circumstances doctrine" to extend the deadline for filing a notice of appeal); *People in Interest of E.H.*, 837 P.2d 284, 287 (Colo. App. 1992) (concluding that a mother's attempt to argue on appeal of a termination order the substantive merits of a dependency and neglect adjudication was untimely and that therefore mother's appeal as to such issues should be dismissed).

¶42 Concluding otherwise and allowing a party to wait until an appeal of a termination order to challenge counsel's performance at the earlier adjudicatory proceeding would create a regime in which parties could litigate a dependency and neglect proceeding through the termination of parental rights (which may well take substantial time and effort), only to be forced to relitigate the case from near its beginning. Such an outcome, however, would undermine the Colorado

Children's Code's goal of ensuring permanency for children. *See, e.g.*, § 19-1-102(1.5)(a)(I), (III), C.R.S. (2019) ("The general assembly declares that it is in the best interests of the child who has been removed from his own home to have the following guarantees: (I) To be placed in a secure and stable environment; . . . and (III) To have assurance of long-term permanency planning."); § 19-1-109(1) (providing that appeals from final orders, decrees, or judgments entered under the Children's Code "shall be advanced on the calendar of the appellate court and shall be decided at the earliest practical time"); *see also People in Interest of D.G.*, 140 P.3d 299, 305 (Colo. App. 2006) (noting "the omnipresent concern with permanence and stability for children").

¶43    Applying the foregoing principles here, we conclude that mother's effort to appeal her counsel's performance at the adjudicatory hearing was untimely. Mother was aware (or reasonably should have been aware) of the facts giving rise to any claim of ineffective assistance at the adjudicatory hearing at or shortly after that hearing.  Mother, however, made no effort to file a timely appeal from the adjudication order.  Nor does the record disclose any factual or legal impediments to mother's ability to pursue a timely appeal.

¶44    In this regard, we are not persuaded by mother's contention that she was unable to file a timely appeal from the adjudication order because the court did not enter a written adjudication order.  To the extent that mother perceived that

21

she had viable appellate issues but lacked a written order, she could have asked the juvenile court to enter such an order, and mother's failure to do so (and her proceeding throughout this case without contesting the validity and finality of the adjudication order) undermines any assertion of good cause or unique circumstances excusing mother's belated appeal. *See E.H.*, 837 P.2d at 287 (concluding that a mother should have raised her claims of error arising from the adjudicatory hearing in a timely appeal from the adjudication decrees); *cf. People in Interest of A.J.*, 143 P.3d 1143, 1148–50 (Colo. App. 2006) (concluding that when a mother timely communicated to her counsel her decision to appeal the termination of her parental rights and counsel did not timely perfect such an appeal, mother had established good cause for extending or suspending the filing deadline); *People in Interest of A.J.H.*, 134 P.3d 528, 531–32 (Colo. App. 2006) (concluding that when a trial court's ambiguous ruling caused the confusion that resulted in a father's untimely appeal of a termination order, the unique circumstances doctrine authorized the appellate court to accept the father's belated appeal).

### C. Ineffective Assistance at the Termination Hearing

¶45    We turn next to mother's claims of ineffective assistance of counsel at the termination hearing. We begin by addressing the standards to be applied in deciding mother's claims. We then discuss several procedural considerations that

are pertinent to an appellate court's review of such claims, including whether and when the court may decide those claims without a remand. Finally, we apply the pertinent standards to the case before us.

## 1. The Proper Test for Prejudice

¶46 The GAL contends that the division erred in adopting a fundamental fairness test for prejudice in the context of ineffective assistance of counsel claims in dependency and neglect cases, rather than applying the test for prejudice set forth in *Strickland*. We agree.

¶47 In Colorado, the right to appointed counsel in termination proceedings is secured by statute, not constitutional mandate. *See* § 19-1-105(2), C.R.S. (2019); *C.S. v. People*, 83 P.3d 627, 636 (Colo. 2004). Specifically, the Children's Code provides that respondent parents have "the right to be represented by counsel at every stage of the proceedings[] and the right to seek the appointment of counsel through the office of respondent parents' counsel . . . if the respondent is unable to financially secure counsel on his or her own." § 19-3-202(1), C.R.S. (2019). Notwithstanding the fact that the right to counsel in these cases is statutory and not constitutional, Colorado courts allow parents to challenge an order of termination on the ground that they did not receive the effective assistance of counsel, recognizing that in a termination proceeding, as in a criminal case in which the right to counsel is constitutionally mandated, counsel is necessary to

protect the parents' right to a fair proceeding. *See Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982) (noting that parents' fundamental liberty interest in the care, custody, and management of their children requires states to afford respondent parents fundamentally fair procedures when seeking to terminate parental rights); *People in Interest of C.H.*, 166 P.3d 288, 290 (Colo. App. 2007) (noting that although a parent's right to appointed counsel in termination proceedings is statutory and not constitutional, Colorado courts allow the parent to challenge an order of termination on the ground of ineffective assistance of counsel).

¶48 In order to prove the ineffective assistance of counsel in the context of a dependency and neglect case, Colorado appellate courts appear to agree that the party asserting that counsel was ineffective must show that counsel's performance was outside the wide range of professionally competent assistance. *See, e.g., C.H.*, 166 P.3d at 290–91 (citing *Strickland*, 466 U.S. at 687). Divisions of the court of appeals have divided, however, as to the appropriate standard for determining the requisite prejudice in such a case.

¶49 The majority of divisions appear to have applied the prejudice standard that was set forth in *Strickland*, 466 U.S. at 694, and that applies in criminal cases. *See, e.g., D.G.*, 140 P.3d at 308 ("To establish prejudice, a parent must show there is a reasonable probability that, but for counsel's deficient performance, the outcome of the hearing would have been different.").

24

¶50 In the present case, however, the division rejected that standard for dependency and neglect cases and concluded that to establish the requisite prejudice in this context, a party must show that counsel's deficient performance rendered the proceeding fundamentally unfair or unreliable. *A.R.*, ¶¶ 56–57. The division reasoned that this was a more appropriate standard for dependency and neglect cases because (1) fundamental fairness "has long been the hallmark of due process in termination of parental rights proceedings"; (2) fundamental fairness "has also been the benchmark by which [the Colorado Supreme Court] has measured the sufficiency of procedures afforded to parents in termination proceedings"; and (3) fundamental fairness is better suited to the "highly discretionary nature of termination proceedings" because the extent of discretion afforded to the juvenile court makes assessing the impact of counsel's performance on the court's decision "problematic, if not impossible," such that an appellate court "can only speculate on the extent to which counsel's performance affected the juvenile court's decision to terminate parental rights." *Id.* at ¶¶ 47–55.

¶51 For a number of reasons, we respectfully disagree with the division's decision to adopt a fundamental fairness test and conclude instead that the *Strickland* test for prejudice applies here.

¶52 First, the fundamental fairness test strikes us as too broad and inherently subjective. As a result, we believe that such a test would be difficult to apply and could lead to inconsistent results.

¶53 For example, the division states that a judgment terminating parental rights may be unreliable if, due to counsel's deficient performance, (1) the court did not receive essential information favorable to the parent that directly related to the statutory termination criteria or (2) the parent was deprived of a significant procedural safeguard to which the law entitled him or her. *Id.* at ¶ 61. What constitutes "essential information," however, is undefined and may well vary depending on the facts of a particular case. Thus, the existence of a relative who *might* be an appropriate placement option could be essential in a given case. In a different case, however, the evidence might definitively show that the relative would not have been a viable placement option. In such a case, we do not believe that counsel's failure to introduce evidence of the possible (but ultimately not viable) placement option would render the proceeding fundamentally unreliable or unfair.

¶54 Likewise, a parent might be denied a "significant procedural safeguard" in a case if the parent was indigent and his or her counsel did not ask the court to appoint an expert witness for that parent. *See* § 19-3-607(1), C.R.S. (2019) (providing that an indigent parent has the right to have appointed one expert

26

witness of his or her own choosing at the state's expense). In a different case, however, the evidence might show, beyond dispute, that the parent has not successfully completed any part of his or her treatment plan, has chosen to have no contact with his or her child, has not participated in any part of the dependency and neglect proceedings, and, by any definition, is an unfit parent, such that the appointment of an expert would have been a pointless exercise. It is not clear to us that counsel's failure to request the appointment of an expert in such a case could be said to have resulted in a fundamentally unreliable or unfair proceeding.

¶55 Second, we are not persuaded that the different legal bases for the rights to counsel in criminal cases and dependency and neglect proceedings warrant different standards of prejudice. In both scenarios, parties are entitled to counsel to protect their fundamental right to a fair proceeding. *See, e.g.*, *Strickland*, 466 U.S. at 684 (noting that the Sixth Amendment right to counsel exists and is needed to protect the fundamental right to a fair trial); *Santosky*, 455 U.S. at 753–54 (noting that parents' fundamental liberty interest in the care, custody, and management of their children requires states to afford respondent parents fundamentally fair procedures in termination proceedings).

¶56 Third, we do not accept the premise that the *Strickland* and fundamental fairness standards would, in practice, necessarily be materially different. To the contrary, we perceive the *Strickland* standard as ultimately seeking to protect a

27

party's right to a fair and reliable proceeding, *Strickland*, 466 U.S. at 684, and this seems to be the focus of the fundamental fairness test as well. Thus, the New Jersey Supreme Court has noted that it saw "little practical difference between the standards" and that "[a]lthough [cases following the fundamental fairness standard] may be slightly more flexible than *Strickland*, the distinction is, to us, inconsequential." *N.J. Div. of Youth & Family Servs. v. B.R.*, 929 A.2d 1034, 1038 (N.J. 2007).

¶57 Fourth, we do not agree that the legal standards governing dependency and neglect proceedings are so discretionary that it would be problematic, if not impossible, to discern the impact of counsel's deficient performance on the court's exercise of discretion. Before terminating parental rights in a case like the one before us, the juvenile court must find, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with or successfully completed an appropriate treatment plan approved by the court; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c)(I)–(III). In addition, the court must consider and eliminate less drastic alternatives to termination. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). And to assist a court in making these findings, the Children's Code provides a number of factors that the

28

court must consider in determining unfitness, conduct, or condition for purposes of section 19-3-604(1)(a). § 19-3-604(2)(a)–(m).

¶58    Unlike the division, we are not convinced that the foregoing standards would make it problematic, if not impossible, to discern the impact of counsel's deficient performance on the court's findings in a termination case. By way of example, we can readily envision a case in which it is undisputed that (1) a child was adjudicated dependent or neglected because of a parent's severe and chronic drug addiction, unemployment, and homelessness and (2) by the time of the termination proceeding, the parent had made no effort to comply with his or her treatment plan and had remained homeless, unemployed, and addicted to drugs, with no prospect for any change in his or her condition in the foreseeable future. In such a case, counsel's conduct may have been deficient in several ways, but the application of the law to the undisputed facts would likely require termination of the parent's parental rights, despite counsel's conduct. *See, e.g.*, *People in Interest of T.M.S.*, 2019 COA 136, ¶¶ 57–64, 454 P.3d 375, 384 (concluding that a mother was not prejudiced by her counsel's failure to secure the attendance of her witnesses on the third day of her termination hearing because she did not explain how the missing witnesses' testimony would have affected the outcome of the case, nor did she suggest that these witnesses' testimony would have refuted the testimony of her therapist, which supported termination of her parental rights); *People in Interest*

*of S.L.*, 2017 COA 160, ¶¶ 57–65, 421 P.3d 1207, 1219–20 (concluding that a father was not prejudiced by his counsel's failure to meet discovery and disclosure deadlines for an expert witness, which resulted in the father's being precluded from calling the witness as an expert, because the witness ultimately was permitted to give lay testimony regarding the father's interaction with his children and it was not apparent to the division that the trial court would have ruled differently had the witness been permitted to testify as an expert).

¶59 Finally, we agree with the New Jersey Supreme Court that "*Strickland* is clear, familiar to lawyers and judges, and carries with it a developed body of case law" and that the majority of state courts that have addressed the issue of ineffective assistance of counsel in termination of parental rights cases have employed the *Strickland* standard. *N.J. Div. of Youth & Family Servs.*, 929 A.2d at 1038. Accordingly, we are not convinced that the *Strickland* standard cannot readily be applied in the present context as well.

¶60 For these reasons, we conclude that the *Strickland* test for prejudice applies in the dependency and neglect context. Thus, to establish prejudice from counsel's deficient performance in a dependency and neglect proceeding, a party must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

## 2. Procedural Considerations

¶61 Having determined the proper test for prejudice to be applied for claims of ineffective assistance of counsel in dependency and neglect cases, we must next determine when, if ever, an appellate court can decide such an ineffective assistance of counsel claim without remanding the case for further factual development.

¶62 This presents a difficult question in the context of dependency and neglect proceedings because of the differences between the procedures employed in criminal cases and those used in dependency and neglect proceedings. In criminal cases, Crim. P. 35(c) provides for postconviction proceedings in which a party may raise, among other things, an ineffective assistance of counsel claim. *See* Crim. P. 35(c)(2)(I) (providing for a postconviction claim that a criminal defendant's conviction was obtained or his or her sentence was imposed in violation of the Constitution or laws of the United States or of Colorado); *see also Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) (noting that Crim. P. 35(c) provides a criminal defendant with an adequate opportunity to develop the required record to establish ineffective assistance). Indeed, in the criminal context, a defendant is generally not permitted to raise a claim of ineffective assistance of counsel on direct appeal because such a claim ordinarily requires the development of a factual record that will not have been developed in the trial court. *Ardolino*, 69 P.3d at 77.

31

If a defendant pleads ineffectiveness with sufficient specificity, then he or she is entitled to a hearing in the district court to make a record of the facts supporting his or her allegation. *See id.* (noting that a motion for postconviction relief under Crim. P. 35(c) may be denied without an evidentiary hearing only when "the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief").

¶63 In contrast, Colorado law provides no specific mechanism for challenging the effectiveness of counsel in a termination of parental rights case. *C.H.*, 166 P.3d at 291. Thus, a parent must employ one of the general procedures available in civil cases, such as a direct appeal. *Id.* As a result of such a procedure, however, the record may be insufficient to allow the appellate court to decide the issue. *Id.* In that scenario, an appellate court will generally remand the case for further factual findings. *Id.* A remand is only required, however, if the parent's allegations are sufficiently specific to constitute a prima facie showing of ineffective assistance of counsel. *Id.* If the parent's allegations lack sufficient specificity, then the ineffective assistance of counsel claim may be summarily denied. *Id.*

¶64 This leaves the question of whether the appellate court must remand for further factual findings in *every* case in which a party alleges sufficient facts to establish a facially viable ineffective assistance of counsel claim. We think not.

Rather, we conclude that an appellate court in a dependency and neglect proceeding may decide an ineffective assistance of counsel claim without remanding the case for further factual development in two circumstances.

¶65 First, in a given case, the record may be sufficiently developed to allow an appellate court to decide the question of counsel's ineffective assistance. For example, the underlying facts of both the case and of counsel's allegedly deficient conduct may be undisputed, such that the only matter before the appellate court is a question of law. *See People v. Valdez*, 969 P.2d 208, 211 (Colo. 1998) ("When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law which is subject to de novo review."); *Camp Bird Colo., Inc. v. Bd. of Cty. Comm'rs*, 215 P.3d 1277, 1281 (Colo. App. 2009) (noting that appellate courts review de novo the application of law to undisputed facts). The appellate court would likely be able to resolve such an ineffective assistance of counsel claim without a remand.

¶66 Second, in a dependency and neglect proceeding, as in a criminal case, prejudice may sometimes be presumed. In the criminal context, the Supreme Court has observed that a court may presume prejudice if counsel "*entirely* fails to subject the prosecution's case to *meaningful* adversarial testing." *Cronic*, 466 U.S. at 659 (emphases added). As the Court and our court have since made clear, this presumption of prejudice applies only in relatively narrow circumstances, as, for

example, when counsel was not made available, was prohibited by the trial court from participating in a critical aspect of the proceeding, or was acting under a conflict of interest. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (noting that no specific showing of prejudice is required when a defendant is, either actually or constructively, completely denied the assistance of counsel because, in such circumstances, the adversary process is presumptively unreliable); *Ybanez v. People*, 2018 CO 16, ¶ 25, 413 P.3d 700, 706 (noting that the Supreme Court has previously presumed prejudice "only in a few narrow circumstances," namely, "where counsel was not made available, was prohibited by the trial court from participating in a critical aspect of the proceeding, or acted under a conflict of interest"). In our view, the same standard for presumed prejudice should apply in the termination of parental rights context, and an appellate court will generally be able to resolve an ineffective assistance of counsel claim involving such presumed prejudice without a remand.

¶67    Absent these circumstances, which we anticipate will arise infrequently, a remand for factual development will ordinarily be necessary.

### 3. Application

¶68    Having set forth the applicable legal standards that govern in this case, we now turn to mother's specific claims. Mother asserts that her counsel was ineffective at the termination hearing because he (1) did not object to the court's

admitting exhibits containing inadmissible hearsay statements; (2) agreed to proceed by way of an offer of proof; and (3) did not properly litigate placing the child with maternal grandmother as a less drastic alternative to termination. We address these contentions in turn.

¶69 With respect to the exhibits, we agree with the division's conclusion that mother did not make a sufficient showing of ineffective assistance of counsel based on counsel's having made no objection to the admission of exhibits allegedly containing hearsay. As the division observed, mother did not explain which exhibits contained inadmissible hearsay or how the admission of such exhibits prejudiced her in any way. *A.R.*, ¶ 88.

¶70 With respect to mother's assertions regarding counsel's allowing the Department to proceed by way of an offer of proof, we first conclude that an attorney's agreeing to allow the Department in an adjudicatory or termination of parental rights hearing to proceed by way of an offer of proof does not establish deficient conduct per se. In dependency and neglect proceedings, "[h]earings may be conducted in an informal manner," § 19-1-106(2), C.R.S. (2019), and we perceive no reason to preclude, as a matter of law, proceeding by way of an offer of proof, *see also* Colo. Bar. Ass'n Ethics Comm., Formal. Op. 114 (modified June 19, 2010) ("The attorney may agree to, or not object to, the presentation of evidence by offers of proof if the client is not present at court, even if the attorney has no recent or

35

unambiguous directions from the client.") (footnote omitted). To the contrary, proceeding by way of an offer of proof may be perfectly appropriate in a case in which the facts are undisputed. And even in a case involving disputed facts, proceeding by way of an offer of proof, subject to the right of the respondent to call the Department's witnesses for cross-examination or to introduce rebuttal evidence, might be a perfectly appropriate way to proceed.

¶71 Nor do we agree with the division that counsel's decision to allow the Department to proceed by way of an offer of proof in this case established presumptive prejudice because, by doing so, counsel did not subject the Department's case to meaningful adversarial testing. *A.R.*, ¶ 95.

¶72 Here, the central facts established by way of the Department's offer of proof—namely, that mother had not successfully completed her treatment plan and had visited her child only once over the past year—appear to have been undisputed. Accordingly, even had mother's counsel objected to the offer of proof and demanded witness testimony, we cannot discern how the facts before the court would have changed. And mother does not indicate what she believes cross-examination or further inquiry of the caseworker would have revealed had her counsel refused to allow the Department to proceed by way of an offer of proof.

¶73 In these circumstances, we conclude that mother has not established that she received ineffective assistance based on her counsel's agreeing to allow the Department to proceed by way of an offer of proof at the termination hearing.

¶74 This leaves the issue of counsel's performance regarding the issue of less drastic alternatives. Although, based on its disposition of the case, the division ultimately did not address this issue, we believe that the record is sufficiently developed to allow us to do so.

¶75 As noted above, to decide whether counsel was ineffective, we must first consider whether counsel's performance fell below the level of reasonably competent assistance. *D.G.*, 140 P.3d at 308. We conclude that it did here.

¶76 Although counsel several times mentioned the maternal grandmother as a possible placement option, he filed no motion or brief making such an argument, seeking an allocation of parental responsibilities to the maternal grandmother or asserting that placement with her provided a less drastic alternative to termination. Indeed, it does not appear that counsel ever presented an argument to the juvenile court specifically relating to less drastic alternatives as a defense against termination.

¶77 Nor did counsel respond to the maternal grandmother's motion for leave to intervene. Instead, counsel filed what he deemed a "Notice of Deposit," submitting a handwritten letter from mother requesting that the maternal

grandmother obtain *temporary* custody until the child was returned to mother. A "Notice of Deposit" is not a proper method for asking a court for relief. Nor do we believe that this "Notice of Deposit" would have alerted the court (or anyone else) that mother was seeking placement with the maternal grandmother as a less drastic alternative to termination. Even had the court interpreted this document as a request for some sort of relief, however, the document appeared to be a request for temporary placement with the maternal grandmother while mother continued to try to complete her treatment plan (i.e., a temporary placement prior to termination, as opposed to an allocation of parental responsibilities as a less drastic alternative to termination).

¶78 Moreover, when the matter proceeded to the termination hearing, counsel appeared to believe—albeit incorrectly—that the court had granted the maternal grandmother leave to intervene, and counsel suggested that his plan for the termination hearing was, in essence, to ride the nonexistent intervenor's coattails at the hearing. In our view, it was not reasonable for counsel to have assumed that the court had granted the maternal grandmother's motion for leave to intervene. Counsel of record are expected to keep abreast of the proceedings in their cases, and certainly with respect to court orders. Accordingly, here, had counsel planned to let the maternal grandmother take the lead, then he should have taken action to

38

support her motion for leave to intervene, seeking a hearing on that motion if necessary.

¶79 Lastly, at the termination hearing, counsel made no motion for placement with or an allocation of parental responsibilities to the maternal grandmother, nor did he argue as a defense to termination that the maternal grandmother (or anyone else) afforded a less drastic alternative to termination. Moreover, when the Department took the position that the child's step-grandmother, with whom the child had been placed, might have been a potential placement option, mother's counsel does not appear to have objected to that, notwithstanding the fact that his client had made clear to him that she wanted the child placed with the maternal grandmother.

¶80 On these facts, we conclude that mother's counsel rendered deficient performance in not properly litigating the question of whether placement with the maternal grandmother offered a less drastic alternative to termination.

¶81 The question thus becomes whether the record establishes prejudice from counsel's deficient conduct. We conclude that it does because the juvenile court itself observed that had the issue of less drastic alternatives been litigated properly, the result would have been different. Specifically, as noted above, after issuing its termination order in this case, the court issued two subsequent orders

39

stating that had it known of the extended family, it would not have entered the termination order because there was a less drastic alternative to termination.[2]

¶82     In these unusual circumstances, we conclude that mother has established that she was denied the effective assistance of counsel in connection with the litigation of the termination hearing.  Accordingly, like the division below, we conclude that a remand to the juvenile court is warranted and appropriate.

¶83     On remand, the juvenile court should reconsider the issue of less drastic alternatives.  If the court finds that less drastic alternatives to termination exist, then the court should enter appropriate orders, subject to the parties' rights of further appeal from those orders.  If the court finds that the current record does not establish less drastic alternatives to termination, then the court must provide mother with an opportunity to present evidence and argument as to less drastic alternatives and must reconsider the question of the propriety of termination of parental rights in light of such evidence.

---

[2] In fairness to mother's counsel, we acknowledge that the parties had discussed the potential placement of the child with either the paternal step-grandmother or the maternal grandmother, and, at least at one point prior to entering the termination order, the court appeared to recognize the relevance of such a placement to the question of less drastic alternatives to termination.  Nonetheless, it was the parties' obligation to litigate that issue properly.

## III. Conclusion

¶84    For these reasons, we reach four principal conclusions in this case.

¶85    First, we conclude that in a direct appeal from a judgment terminating parental rights, an appellate court may consider a claim of ineffective assistance of counsel based on counsel's performance at an adjudicatory hearing only when the party asserting the claimed ineffective assistance did not have a full and fair opportunity to bring such a claim immediately after his or her child was adjudicated dependent and neglected (as, for example, by way of a direct appeal of the adjudication order).

¶86    Second, we conclude that the proper test for prejudice in the context of a claim of ineffective assistance of counsel in a dependency and neglect proceeding is the test for prejudice set forth in *Strickland*, 466 U.S. at 694, and not the fundamental fairness test adopted by the division below. Thus, to establish prejudice from counsel's deficient performance in a dependency and neglect proceeding, a party must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

¶87    Third, we conclude that an appellate court may vacate a juvenile court's decision in a dependency and neglect proceeding without remanding for further fact-finding when either the record is sufficiently developed to allow the appellate

court to decide the question of counsel's ineffectiveness or the record establishes presumptive prejudice under the standard set forth in *Cronic*, 466 U.S. at 656–62.

¶88 Finally, we conclude that mother has established that but for counsel's deficient performance in litigating the question of less drastic alternatives, there is a reasonable probability that the juvenile court would not have terminated her parental rights.

¶89 Accordingly, we affirm the judgment of the division below, albeit on different grounds than those on which the division relied, and we remand this case to the court of appeals with instructions to return the case to the juvenile court for further proceedings consistent with this opinion.